GULF, WESTERN TEXAS & PACIFIC RAILWAY COMPANY ET AL. v.
N. H. BROWNE.

Decided January 6, 1902.

**1.—Sale—Venue—Corporation.**

Where a private corporation purchased goods to be delivered free on board cars in G. County for an agreed price to be paid in cash, the contract was to be performed in G. County, and the corporation could be sued there for the price of the goods, although its domicile was in another county. Rev. Stats., art 1194 (exception 23).

**2.—Same—Delivery Complete—Injury in Transit.**

Upon the delivery of the goods free on board the cars in G. County, the title passed, and the risk of damage then became the buyer's, although the seller drew drafts for the price, with bill of lading attached, on defendant at its domicile in H. County,—this being so done to meet the convenience of the purchaser in making payment.

**3.—Same—Pleading Over Against Carrier.**

Where a buyer is sued for the price of goods shipped by rail and damaged in transit, he has the right, although he denies that the title had passed or that the goods were his, to implead the carrier to recover the damages in the alternative that the goods should be held to have been at his risk in transit. See plea held good against a general demurrer.

**4.—Same—Joinder of Actions.**

The joinder of causes of actions is left in a large measure to the discretion of the trial court, and where suit was brought for the price of goods damaged in transit through the negligence of a common carrier, defendant was properly allowed to bring in the carrier on his plea for judgment over against it in the event he was found to be the owner when the damages occurred and liable to plaintiff for the full price.

**5.—Common Carrier—Negligence—Act of God.**

See evidence held insufficient to clear a railway company of negligence because of injury to its cars by an unprecedented storm.

**6.—Same—Right to Retain Freight Charges.**

Where goods were damaged in transit through negligence of the initial car-

rier, and the purchaser refused them on their delivery by a connecting carrier, and the latter sold the goods upon instructions of the purchaser, it was properly allowed to retain its freight charges out of the proceeds of the sale.

Appeal from the County Court of Goliad. Tried below before Hon. M. W. Fowler, Special Judge.

*Proctors,* for appellant Railway Company.

*G. E. Pope,* for appellant Houston Cotton Oil Company.

*Bell & Brown,* for appellee.

GARRETT, Chief Justice.—N. H. Browne brought suit in the County Court of Goliad County against the Houston Cotton Oil Company, a corporation under the laws of the State of Texas, with its domicile in Harris County, for the recovery of the agreed price of two carloads of cotton seed sold to it by the plaintiff and delivered free on board the cars of the Gulf, Western Texas & Pacific Railway Company at Goliad for shipment to the oil company at Houston. The oil company had no agent in Goliad County. The contract of sale was made with the plaintiff by one Swift, an agent of the oil company, by telephone from Cuero. Browne required payment for the seed in cash, and Swift requested him to draw upon the oil company for the price of each carload, less one ton for the correction of weights at the defendant's mill, with bills of lading attached, which he did through a bank at Goliad. The drafts and bills of lading were sent by the bank to Galveston, and the seed were shipped on the morning of September 8, 1900. The great storm of that date having occurred, Browne directed the railway company to deliver the seed to the oil company without presentation of the bills of lading. The seed were tendered to the oil company by the Galveston, Harrisburg & San Antonio Railway Company, to which it had been delivered in course of transportation, but the oil company refused to accept them because they were rotten and unsound, and refused to pay for them. The defendant oil company first pleaded to the venue of the suit, and further answering the plaintiff's cause of action, it denied that the contract was for the sale and delivery of the seed at Goliad, but that, on the contrary, it was for the delivery of the seed on board cars in the city of Houston, Harris County, and alleged that the seed were to be sound dry seed for use in the manufacture of cotton seed oil, but that plaintiff, disregarding his agreement, shipped and offered to deliver to the defendant seed which, upon their arrival in Houston, were found to be rotten and entirely worthless, and the defendant refused to receive the same, and so notified the plaintiff. It pleaded further that the cars containing said seed were tendered to it by the Galveston, Harrisburg & San Antonio Railway Company, and that immediately upon finding out the condition of the seed, it notified said railway of its re-

fusal to accept the same, and ordered that they be sold for the best price obtainable, the proceeds to be held for whom it might concern; that the seed were sold by the defendant by the direction of the railway company, and the proceeds, $112.88, were delivered to the railway company; and the defendant prayed that the Galveston, Harrisburg & San Antonio Railway Company might be made a party to the suit for the purpose of determining the ownership of the money held by it.

The answer also contained the following allegations making the appellant Gulf, Western Texas & Pacific Railway Company a party to the suit: "Defendant would further show to the court that heretofore, to wit, on the 8th day of September, 1900, the cotton seed referred to in plaintiff's petition were by plaintiff, N. H. Browne, delivered at Goliad, Texas, to the Gulf, Western Texas & Pacific Railway Company, a railway corporation duly incorporated under the laws of the State of Texas, and a common carrier for hire, having a local agent at Goliad, to wit, A. H. Williams, as defendant is informed and so believes and now charges, for the purposes of the alternative prayer hereinafter made, in good, sound condition, to be transported by said railway company, for a valuable consideration stipulated to be paid to said railway company, with dispatch and caution from said town of Goliad, in Goliad County, to the city of Houston, in Harris County, Texas, and there to be delivered to this defendant in good, sound condition; but that said Gulf, Western Texas & Pacific Railway Company, disregarding its contract so to do, negligently failed to transport and deliver said seed with diligence, dispatch, and caution, and said seed were delayed en route to said Houston, Texas, far beyond the time ordinarily and necessarily consumed in the transportation of freight from Goliad to Houston, and that by reason of said long delay in transportation and the negligent handling of said seed while being transported, and the defective condition of the cars in which said seed were being carried, the exact nature and character of any or of all of which this defendant is unable to state, the said seed became and were wet, heated, and spoiled, and were entirely rotten and worthless to this defendant when they reached the said city of Houston, and were tendered to defendant, and on account thereof defendant refused to receive said seed from said railway company. Defendant therefore prays that said Gulf, Western Texas & Pacific Railway Company be made a party to this suit. Premises considered, defendant prays that citation issue to said Galveston, Harrisburg & San Antonio Railway Company and the Gulf, Western Texas & Pacific Railway Company in the terms of law, requiring them and each of them to appear at the next term of this court, and in the event plaintiff recovers a judgment against this defendant, that defendant have judgment over against the Galveston, Harrisburg & San Antonio Railway Company for the sum of $112.88, proceeds of sale of cotton seed ordered sold by said company, and that it have judgment over against Gulf, Western Texas & Pacific Railway Company for the balance of any judgment plaintiff may recover, after deducting the amount so recovered from said Galveston,

Harrisburg & San Antonio Railway Company. And defendant prays for any other or further relief which it may be entitled to in law or equity."

The Gulf, Western Texas & Pacific Railway Company demurred to the plea of the cotton oil company generally that it did not state any cause of action against it, and that the cause of action attempted to be set up could not be joined with the original cause of action for the price of the cotton seed. It also pleaded specially that the cars into which the seed were loaded were proper and suitable cars, in no manner defective, and were thoroughly dry and clean; that if the seed became spoiled the condition was not due to any defect in the cars in which they were loaded. Appellant further alleged that it only became liable for the transportation of the seed from Goliad to Victoria, the end of its line; but that if it were held liable for the entire transportation to Houston, and there were any delays whereby the seed were damaged, the same were due solely to the act of God in the storm of September 8, 1900, the facts of which and of the transportation were fully alleged, and in no manner to any act or omission on the part of the appellant; and neither plaintiff nor the cotton oil company should recover anything from it in this cause.

The answer of the Galveston, Harrisburg & San Antonio Railway Company to the pleading of appellant against it admitted the sale of the seed as alleged by the oil company, and alleged that after deducting the freight charges, which amounted to $97.92, there was left in its hands $14.96 to be disposed of in accordance with the provisions of the statute. When the case was called for trial the court overruled the plea of the cotton oil company to the venue and the demurrers of the appellant railway company, and having heard the case without a jury, rendered judgment in favor of the plaintiff against the cotton oil company for the sum of $463.65, the amount sued for, with legal interest; and in favor of the cotton oil company against the Gulf, Western Texas & Pacific Railway Company for the sum of $448.69, the amount of plaintiff's judgment, less $14.96 for which it recovered judgment against the Galveston, Harrisburg & San Antonio Railway Company.

The conclusion of the trial court in overruling the plea to the venue of the suit is supported by the evidence and should be sustained. According to the finding of the court the contract was that of a private corporation, and arose in the county of Goliad. Such being the case, the defendant could be sued in that county. Rev. Stats., art. 1194, exception 23. Swift, the agent of the defendant, purchased the two carloads of cotton seed from the plaintiff to be delivered on board the cars at Goliad for an agreed price to be paid in cash, with the exception of one ton in each car to allow for loss in weight at the defendant's mill. Thus stated, the contract is clearly one to be performed in Goliad County. But it is claimed that by drawing on the defendant at Houston for the price of the seed with bills of lading attached, the plaintiff retained in himself the title to the seed until they should be paid for,

and that thus the contract was one to be performed in Harris County: No doubt these facts would make prima facie such a contract. Seley v. Williams, 20 Texas Civ. App., 405. The evidence was sufficient, however, to overcome this prima facie case, and to show that according to the intention of the parties the seed became the property of the defendant when they were delivered on board the cars at Goliad, and that the drafts with bills of lading attached were drawn at the request and for the convenience of Swift, the agent of defendant, to enable him to pay cash for the seed as he had agreed to do, he not being present when they were delivered. And the effect of the transaction was to pass the title of the seed to the defendant, with a lien and right of possession in favor of the plaintiff until they were paid for. Craig v. Marx, 65 Texas, 649; Waples v. Overtaker, 77 Texas, 7. The finding that the seed were sound and dry when they were loaded in the cars is also supported by the evidence, and the title having then passed to the defendant, the plaintiff was not responsible for their condition when they reached Houston, and was entitled to recover the full price for dry and sound seed.

We are of the opinion that the answer and plea of the defendant to the plaintiff's cause of action and impleading the appellant was sufficient upon general demurrer to show a cause of action against the railway company in favor of the cotton oil company for damage to the seed in transit. The petition and answer disclosed a controversy between the plaintiff and defendant as to the ownership of the seed while they were in the possession of the railway company, and construing the entire answer and plea in the light of the issue thus made, and indulging every reasonable intendment in favor of the pleading, we think it at least argumentatively appears that the defendant sought relief against the appellant upon the alternative that it should be held to be the owner of the seed, and that the pleading was good upon general demurrer. Wynne v. Bank, 82 Texas, 378. The joinder of causes of action is left in a large measure to the discretion of the trial court. If, under the facts in this case, the plaintiff asserting title to the cotton seed had sued the railway company for damages to them in course of transportation to Houston, the railway company would hardly be denied the right to implead the cotton oil company and have the right of ownership settled, so as to prevent a double recovery against it. The cotton oil company, on the other hand, might reasonably desire to have the liability of the railway company to it determined in the same suit in which the ownership of the seed as between it and plaintiff was settled. The appellant does not appear to have sustained any injury by the action of the court in requiring it to answer the complaint of the defendant. It was not drawn into a jurisdiction in which it could not otherwise have been sued; nor does it appear to have been delayed or in any manner prejudiced in being required to go to trial. Its liability to the defendant depended upon the issue of ownership between the plaintiff and defendant, and we can not hold that it ought not to have been brought into the case. There was no error in overruling the demurrer to the joinder of

27 Texas Civil Appeals Reports. [1st District,

causes of action. We have considered the facts as to the storm, and the exemption of the appellant from liability for it as an act of God, and are of the opinion that the conclusion of the trial court that the appellant has failed to clear itself of negligence must be sustained. The testimony is not satisfactory as to the conditions of the cars when the seed were loaded. According to the evidence of the seed men, they appeared to be good, close, dry cars; and of the conductor Woodhouse, that the cars were in good condition when they left Victoria. This is very general evidence as to the condition of the cars, and does not at all exclude the idea that they may have been in a leaky condition. There is no evidence as to the effect of the storm upon them, or to show that they were broken or leaks caused as a result thereof. The court properly allowed the Galveston, Harrisburg & San Antonio Railway Company to retain the money for the freight out of the proceeds of the sale of the seed, and the pleadings were sufficient to authorize a recovery by the defendant for the difference after deducting the net proceeds.

The judgment of the court below will be affirmed.

*Affirmed.*