**FARMERS' NAT. BANK OF CENTER et al.
v. MERCHANTS' NAT. BANK OF
HOUSTON.**

(Court of Civil Appeals of Texas. April 19, 1911. Rehearing Denied May 4, 1911.)

1. PARTIES (§ 75*)—DEFECTS—OBJECTIONS.

Misjoinder and nonjoinder of parties must be pleaded in limine, and objections cannot be raised by general demurrer.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 115, 116; Dec. Dig. § 75.*]

2. ACTION (§ 47*)—JOINDER—CONTRACT AND TORT.

Where the controversy between all the parties grows out of the same transaction, the court is vested with a liberal discretion in acting on exceptions to misjoinder of parties and causes of action, though the issues raised involve matters ex contractu and ex delicto.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 469–489; Dec. Dig. § 47.*]

3. TRIAL (§ 178*) — DIRECTING VERDICT— PLEADING AND EVIDENCE.

Plaintiff's pleadings alleging facts whereby a third person was its agent, for any negligence of whom it was liable, so that it was entitled to recovery only in the absence of negligence of such third person, the question of error in directing verdict for plaintiff is to be determined without regard to proof of facts, which was made, under which such person was defendant's agent, for whose negligence plaintiff was not liable.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 178.*]

4. BANKS AND BANKING (§ 175*) — COLLECTION OF DRAFTS—NEGLIGENCE—EVIDENCE.

Evidence in an action involving the question of negligence in not collecting a draft *held* to show no negligence of plaintiff bank, with which it was deposited for collection, or of the bank to which plaintiff forwarded it.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 175.*]

5. BANKS AND BANKING (§ 126*)—ADVANCEMENT ON DEPOSIT FOR COLLECTION.

Where plaintiff bank, with which defendants deposited a draft for collection, on getting notice that the draft had been received by the bank to which it was forwarded for collection, entered the amount of the draft to defendants' credit, and permitted them to check it out in the ordinary course of business, this was an advancement or loan to them on the faith of the payment of the draft, so that they

were liable therefor to it; the draft not having been paid, through no fault of it or the other bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 309; Dec. Dig. § 126.*]

**6. BANKS AND BANKING (§ 171*)—COLLECTIONS—NEGLIGENCE.**

Plaintiff bank, with which defendants deposited a draft for collection, though never collecting it, having notified them that it was collected, and not having notified them to the contrary till it was too late to share in the insolvent estate of their debtor, because of its negligence in not so notifying them, is liable to them for the proportion of the draft which could have been collected by presenting the claim in the insolvency proceedings.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 597–618; Dec. Dig. § 171.*]

**7. BANKS AND BANKING (§ 171*)—COLLECTIONS—LIABILITY OF BANKS INTER SESE.**

Where a draft, deposited with plaintiff bank for collection, was forwarded by it to defendant bank to collect, and plaintiff, immediately on notice of its receipt by defendant, entered the amount thereof to the depositor's credit, which they immediately drew out, any subsequent negligence of defendant, in making statements showing the amount of the draft to plaintiff's credit, when the draft, through no negligence, however, was never collected, did not make it liable to plaintiff; plaintiff being entitled to recover of the depositors the amount it advanced to them, and being liable to them only because of its negligence in not informing them of nonpayment of the draft in time for them to present their claim against the insolvent estate of their debtor, whereby they could have secured payment of part of it, and plaintiff having been informed by defendant of the nonpayment in time for this.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 171.*]

Appeal from District Court, Shelby County; James I. Perkins, Judge.

Action by the Farmers' National Bank of Center against the Merchants' National Bank of Houston and others. From the judgment in favor of defendant bank, plaintiff appeals; and from the judgment for plaintiff against defendants Potts & Lynch, said Potts & Lynch appeal. Judgment for defendant bank affirmed, judgment for plaintiff reversed, and case remanded.

D. M. Short & Sons, for appellants Potts & Lynch. Bryarly, Carter & Walker, for appellant Farmers' Nat. Bank. Davis & Davis, Lane, Wolters & Storey, and Wm. A. Vinson, for appellee.

McMEANS, J. The Farmers' National Bank of Center, hereafter called the Farmers' Bank, brought this suit against the Merchants' National Bank of Houston, hereafter called the Merchants' Bank, and Potts & Lynch, a copartnership composed of W. C. Potts and W. H. Lynch to recover the amount of a draft drawn by Potts & Lynch in favor of the Farmers' Bank upon the Valley Lumber Company for $1,500. Plaintiff alleged that on the 3d day of June, 1907, Potts & Lynch drew a customer's draft on the Valley Lumber Company, a corporation, in favor of the Farmers' Bank for $1,500, and that said bank received the same for collection and forwarded it to the Merchants' Bank; that it was received by the latter on June 5, 1907, and receipt thereof was acknowledged on said date, with the statement that the amount of the draft had been credited to the account of the Farmers' Bank; that on receipt of this advice the Farmers' Bank credited the account of Potts & Lynch with said sum, and notified them that they could draw against said sum in the usual course of business, which they proceeded to do, and that they thereafter drew by their checks said amount out of the plaintiff bank; that the Merchants' Bank never gave the Farmers' Bank any further information about said draft until June 25, 1907, when the former informed the latter that the draft had been lost, and requested a duplicate; that the Farmers' Bank asked Potts & Lynch for a duplicate, which they refused to give, and the Merchants' Bank was at once notified of such refusal; that at this time the Valley Lumber Company, the drawee, was solvent, and if the duplicate had been given by Potts & Lynch it would have been paid by the lumber company, if in fact it owed Potts & Lynch that amount; that as a matter of fact the lumber company was not indebted to Potts & Lynch; that there were mutual accounts between said parties, and that there had been no settlement between them; and that upon a settlement between them it would have developed that the lumber company owed Potts & Lynch nothing, which fact Potts & Lynch then knew, but drew the draft and gave the same to the Farmers' Bank for the purpose of wrongfully obtaining said sum from it. Plaintiff further alleged that at the time it received said draft the Valley Lumber Company was a going concern, and did not go into the hands of a receiver until long thereafter, and that when the business of said company was finally wound up its assets paid 75 per cent. of its indebtedness; that if the said Potts & Lynch, or the Merchants' Bank, had made any effort to do so, they could have collected on said claim 75 per cent. thereof, but no effort was made in that regard by either. It further alleged that plaintiff never heard anything more from the Merchants' Bank about the draft until July 1, 1907, when plaintiff received from it a statement showing said sum of $1,500 to the credit of plaintiff, and that this credit was also shown in statements received by plaintiff from the Merchants' Bank on the 1st days of August and September, 1907; that on September 11, 1907, plaintiff received notice from defendant bank that the draft had not been collected by it from the lumber company, and that the same had been charged back to plaintiff; that it was by the combined wrongful and negligent acts of the defendants that plaintiff was wrongfully in-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

duced to pay out said sum of $1,500 to defendants Potts & Lynch; and that all defendants are therefore liable to plaintiff therefor.

The defendant Merchants' Bank, after a general denial, specially pleaded that it acknowledged to the Farmers' Bank receipt of the draft in question upon a postal card in general use by it, in which it was stated that it had received plaintiff's communication, with its stated inclosure. and that it had entered credit therefor, "out of town items subject to final cash payment." It further alleged its effort and failure to make collection of the draft, pleaded the insolvency of the lumber company, and, while claiming to have acted with due diligence, alleged that nevertheless, if there had been any negligence on its part, no injury had resulted therefrom to plaintiff, nor to Potts & Lynch, for the reason that it had tried and could not, or if it had tried it could not, have collected from the Valley Lumber Company, because of its insolvency, the amount of the draft at any time from the date of the draft to the time when the property of the lumber company was placed in the hands of a receiver.

Defendants Potts & Lynch urged a general demurrer to plaintiff's petition, and a further demurrer of misjoinder of parties defendant, because of want of privity between them, pleaded a general denial, and specially pleaded the same matters that were alleged by plaintiff in regard to the drawing of the draft, placing it with plaintiff for collection, the crediting of their account for the amount thereof, and the payment thereof to them upon their order. They further alleged that plaintiff obligated itself to collect said draft, itself or by its agents, and that plaintiff represented to them that the same had been collected, and that they acted in good faith in accepting said representation as true; that, if the draft was not in fact collected, the failure to collect it was the result of the negligence of plaintiff and its agents; that for more than 20 days after said draft was delivered to plaintiff the Valley Lumber Company was actively engaged in business; that if said draft had been presented within that time it would have been paid; that on or about June 25, 1907, the Valley Lumber Company was placed in the hands of a receiver, and that plaintiff failed to present said draft to said receiver for payment; that they, Potts & Lynch, had received payment of their claim against the Valley Lumber Company, and had no further claim against said company; that the assets of the lumber company were sufficient to have paid $1,000 of the claim sued on; that by failing to return the draft to them, and by representing to them the draft had been paid, the plaintiff is estopped from demanding payment of them now. They further pleaded that, had said draft not been paid, as plaintiff reported to them that it had been,

and had they been notified of said nonpayment, and the said draft had been returned to them, they would have presented said draft, or the claim it represented, to the Valley Lumber Company, and if said claim had not been collected before the property was placed in the hands of a receiver they would have taken the necessary steps to establish their claim in the court where the receivership was pending, and would have received at least $1,000 from the proceeds of the sale of the property of the lumber company, and would have received as much as any other creditor of said company, at least 66⅔ per cent., all of which defendants were prevented from doing by the aforesaid acts and statements of plaintiff.

The case was tried before a jury, and under a peremptory instruction from the court a verdict was returned in favor of the Merchants' Bank, and in favor of the Farmers' Bank as against the defendants Potts & Lynch, for $1,500, with 6 per cent. interest from September 11, 1907, upon which verdict judgment was accordingly entered, and from which judgment the plaintiff and the defendants Potts & Lynch have appealed.

We will first dispose of the appeal of Potts & Lynch. We may say at the outset that these appellants nowhere in their pleadings pray for judgment over against the Merchants' Bank.

[1] Their first assignment of error complains of the action of the court in refusing to sustain their general demurrer to plaintiff's petition. Their proposition under this assignment is as follows: "Inconsistent facts cannot properly be embraced in one count in a pleading; and where one bank, which had a draft drawn in its favor against a third party, and which it has sent to another bank for collection, sues the latter on the ground of negligence in failing to collect the draft, and also sues the drawers of the draft on the ground of fraud, there is no privity of causes of action, and a misjoinder of parties defendant." It has been held that misjoinder and nonjoinder of parties should be pleaded in limine, and cannot be raised by general demurrer. Hill v. Newman, 67 Tex. 265, 3 S. W. 271; Kemendo v. Fruit Dispatch Co., 131 S. W. 76. The assignment is overruled.

[2] By their second assignment appellants Potts & Lynch complain that the court erred in refusing to sustain their special exception to plaintiff's petition, to the effect that these appellants were improperly joined with the Merchants' National Bank as defendants in this suit. We think this contention is without merit. This controversy between all the parties grew out of the same transaction; that is to say, the drawing of the draft, depositing it for collection with the Farmers' Bank, and the appropriation by Potts & Lynch of an amount of money placed to their credit by the Farmers' Bank upon the faith of the bona fides of Potts & Lynch in making

the draft and upon that of the Merchants' Bank in using due diligence in making collection. Our courts are vested with liberal discretion in acting upon such exceptions, notwithstanding the issues raised thereby involve matters ex contractu, as well as ex delicto. Gulf, West Texas & Pacific Ry. Co. v. Browne, 27 Tex. Civ. App. 437, 66 S. W. 341; Kemendo v. Fruit Dispatch Co., 131 S. W. 76; Morris v. Davis, 31 S. W. 850. In the Kemendo Case it is said: "It is held in Hooks v. Fitzenrieter, 76 Tex. 277 [13 S. W. 230], and in N. Y. L. S. v. Rohrbough, 2 Willson, Civ. Cas. Ct. App. § 216, that the right to sue for the breach of a contract and tort, when both grow out of the same transaction, is recognized by our courts." The assignment is overruled.

What we have said in disposing of the second assignment of error sufficiently disposes of the fourth and sixth, each of which is overruled without further comment.

Their ninth assignment is as follows: "The court erred in delivering to the jury the peremptory instruction in favor of the plaintiff against these defendants, because under the pleadings and the testimony no such instructions were demanded or authorized." The evidence in the record justifies the following findings:

June 3, 1907, Potts & Lynch, engaged in business at Neuville, Shelby county, Tex., drew a draft for $1,500 on the Valley Lumber Company, also engaged in business in Neuville, in favor of the Farmers' National Bank of Center, and on said date presented said draft to said bank, with instructions to send it to the Merchants' National Bank of Houston for collection. This instruction was complied with; the Farmers' Bank on the same day forwarding the draft by United States mail to the Merchants' Bank, and it was received by the latter on June 5, 1907. The Merchants' Bank at once acknowledged receipt of the draft by postal card, using for this purpose a card in general used by it; the acknowledgment, together with matter printed upon the card, being as follows: "Your favor of the 3d is received with stated inclosures. We enter for credit (out of town items subject to final cash payment) $1,500." "All items not payable in Houston, received by this bank, for credit or collection, are taken at owner's risk. This bank, as agent of the owner, will forward same to collecting agents out of this city; but should such collecting agents convert the proceeds, or remit in checks or drafts which are thereafter dishonored, the amount for which such credit has been given will be charged back. This bank assumes no responsibility for neglect or default of collecting agents." The language last quoted was printed upon the margin of the card.

At the time of mailing this card to the Farmers' Bank, the Merchants' Bank also mailed a letter to the Valley Lumber Company at Neuville, notifying it that the bank held the draft for collection and requesting immediate payment of the same. Receiving no reply to this demand, the bank, after waiting a few days, renewed its demand for payment. On June 3 and 4, 1907, one Curry, who was general manager of the Valley Lumber Company, left Neuville without placing any one in charge of the plant and business of his company. About June 10th he wrote to O. S. Wooley, who had general charge of the "outside business" of the lumber company, to take general charge of the affairs of said company, whereupon Wooley did take charge of the office, books, papers, and general affairs of the company, and it was then that he found in the office of the company an unopened letter, which proved to be the demand by the Merchants' Bank upon the lumber company for the payment of the Potts & Lynch draft. This demand could not have reached the lumber company earlier than June 7th. Wooley did not pay the draft, because he said he lacked authority, and because at that time the lumber company was in financial difficulties, so much so that on June 15th, five days after he opened the bank's letter containing the demand, a suit against the lumber company was instituted, in which the appointment of a receiver was prayed for, and which prayer on said date was granted, and Wooley named by the court as receiver. He did not qualify as such, however, until July 10, 1907; but he testified that on June 10th, when he took charge of the company's office and found the letter demanding payment of the draft, "there was nothing doing." The receivership was not finally wound up and the receiver discharged until January 28, 1908. The assets of the lumber company paid 42 per cent. of all debts properly proved up by the creditors.

When the Farmers' Bank received acknowledgment from the Merchants' Bank of receipt of the draft, it so notified Potts & Lynch and at once placed the amount of the draft to Potts & Lynch's credit, and authorized them to draw against it in the ordinary course of business. At that time, however, Potts & Lynch were due the bank $500 on overdrafts, and this amount was first discharged from the $1,500 placed by the bank to their credit, leaving a net balance to the credit of their account of $1,000, which amount was subsequently drawn and used by Potts & Lynch as their business needs required.

On June 25, 1907, the Merchants' Bank wrote to the Farmers' Bank as follows: "On the 4th inst. you sent us a draft for $1,500, drawn by Potts & Lynch on the Valley Lbr. Co., Neuville, Texas. We advised the Valley Lbr. Co., that we held the draft, and did not hear from them definitely until recently. The draft has been misplaced by the collection boy, and we are unable to locate it. Please advise us if you can secure a duplicate draft, and we will present again,

or whether Potts & Lynch can settle the matter with the Valley Lbr. Co. without drawing a draft on them." Upon receipt of this letter the Farmers' Bank requested Potts & Lynch to make a duplicate draft; but they declined to do so, on the ground that they had already received the amount of the draft and were no longer concerned in the matter.

When the Merchants' Bank received the draft for collection on June 5th, it at once entered the amount thereof to the credit of the account of the Farmers' Bank, and in monthly statements sent by the former to the latter on the 1st days of July, August, and September, 1907, showing the condition of its account, this sum was shown to be credited to the account of the Farmers' Bank. On September 11, 1907, the amount was charged back, and the Farmers' Bank was so notified. It was shown that neither Potts & Lynch, nor the Farmers' Bank, nor the Merchants' Bank, proved up and presented to the receiver for payment any claim for any amount due Potts & Lynch.

At the time the Farmers' Bank received notice from the Merchants' Bank, June 25th, that the draft had not been paid and had been lost, and to procure a duplicate draft, Potts & Lynch had drawn all of the amount to their credit in the Farmers' Bank, except a small balance, and this they were thereafter in a short time permitted to withdraw.

[3] While we have found as a fact that at the time Potts & Lynch presented the draft to the Farmers' Bank they instructed that it be sent to the Merchants' Bank for collection, no such averment is made by the pleadings of any of the parties; but, on the contrary, all of them directly or by fair intendment alleged that the draft was deposited by the drawers in the Farmers' Bank for collection, and that the act of that bank in sending it to the Merchants' Bank was its voluntary act, and not the result of directions given by the drawers. It has been held that where the drawer, at the time of depositing a draft with a bank, directs that the draft be sent to a particular bank for collection, the latter is thereby constituted the agent of the depositor, and not of the forwarding bank, and in such case the forwarding bank is not liable for the default or negligence of the bank selected by the depositor to make the collection. First National Bank v. Quimby, 131 S. W. 429; Schumacher v. Trent, 18 Tex. Civ. App. 17, 44 S. W. 460. In view of the pleadings of the parties, however, this issue was not raised, and the case must be treated, therefore, as if no such proof was made.

[4] The question then arises: Do the facts stated make out a case in favor of the Farmers' Bank against Potts & Lynch? Or, in other words, do the facts authorize a judgment in favor of Potts & Lynch? An answer to this question depends on whether the Farmers' Bank, in handling the draft, used ordinary diligence in trying to make the collection. It is not contended that by sending the draft to the Merchants' Bank at Houston for collection, instead of attempting to collect directly from the drawee, the Farmers' Bank departed from the ordinary business methods in making collections, or that this method involved a want of ordinary diligence. The testimony leaves no doubt that the forwarding bank acted with reasonable promptness in forwarding the draft to its correspondent in Houston, and that the latter also acted with reasonable promptness in making demand for payment. Nor was it shown that the Merchants' Bank was guilty of any negligence in not presenting its demand after it was first made; for the testimony shows that a second demand was made about a week later, and that before this time the Valley Lumber Company had become so financially involved that a collection from it by the ordinary methods adopted by banks could not have been made. Up to this time we think that the Merchants' Bank, as the agent of the Farmers' Bank, had acted with due diligence in making the collection, and after this the insolvency of the Valley Lumber Company was such that whatever diligence of any degree might have been exercised in the attempt to collect the draft would have been futile. No actionable negligence of either bank in the regard discussed having been shown, it was not error for the court to instruct a verdict for the Farmers' Bank against Potts & Lynch.

[5] It will be remembered that, as soon as the Farmers' Bank received notice that the draft had been received by the Merchants' Bank, it at once entered the amount of the draft to the credit of Potts & Lynch, and permitted them to check it out in ordinary course of business. This was nothing less than an advancement or loan to Potts & Lynch on the faith of the payment of the draft, and, the draft remaining unpaid through no fault of the bank, left Potts & Lynch its debtors to the extent of the amount so advanced. Thus far we have not discussed the question of liability of the Farmers' Bank to Potts & Lynch, growing out of the matters pleaded by the latter, for the alleged negligence of the former in informing them that the draft had been paid, and in not informing them of the noncollection of the draft in time to allow them to present their claim to the receiver, and thus collect their proper proportion of the debt owing them by the lumber company. Indeed, this question is not presented in this connection, but is only presented in connection with the assignment relating to the exclusion of certain testimony, which we will hereafter pass upon. In view of the record as presented to us, and on the evidence admitted by the court, there was no error in giving the peremptory charge complained of, and the assignment is overruled.

[6] Appellants Potts & Lynch's seventh as-

signment of error is as follows: "The court erred in refusing to allow these defendants to introduce the witness W. C. Potts, who would have testified that these defendants, before drawing of the draft mentioned in plaintiff's petition, had a just, due, and unpaid claim against the Valley Lumber Company for $1,500, and that they drew this particular draft on the Valley Lumber Company in plaintiff's favor by reason of this claim, afterwards received payment of the draft, and the information from the plaintiff that the Valley Lumber Company was placed in the hands of a receiver, but that they had no claim against it, and made no effort to present any claim, because of the payment of said draft and the information given them by the plaintiff, upon which they relied, that the Valley Lumber Company had paid said draft; that Potts & Lynch would have presented their claim to the receiver of the said Valley Lumber Company, and would have had it approved, and would have collected such portion of their claim as was in fact paid to creditors, which was not less than 42 per cent., had they not been informed that this particular draft had been paid, which said testimony was excluded upon objections of the plaintiff, all of which is shown by the bill of exception No. 5."

The issue of negligence of plaintiff in not informing these appellants of the noncollection of the draft in time to allow defendants Potts & Lynch to present their claim to the receiver for allowance before the close of the receivership, and their loss in consequence, was raised by their pleadings. The bill of exceptions referred to shows that the testimony offered and rejected was substantially as stated in the assignment. If in fact the Farmers' Bank informed Potts & Lynch, and they were thus led to believe, that their draft had been paid by the lumber company, and if they had been seasonably informed that the draft had not been paid, they would have taken such steps as would have resulted in the collection from the receiver of 42 per cent. of their claim, and they were not so informed, we see no reason why they would not be entitled to a jugdment against the bank for this amount in set-off to the claim of the bank for the amount advanced by the bank to them. We think the refusal of the court to allow the testimony was error, for which the judgment in favor of plaintiff against Potts & Lynch should be reversed.

We will not discuss the other assignments of error presented by appellants Potts & Lynch, for to do so would extend this opinion, already too long, beyond all reasonable bounds. It is sufficient, we think, to say that we have examined all their assignments of error, and, with the exception of the seventh, find no reversible errors in any of them.

[7] We come now to a consideration of the only assignment of error presented by appellant Farmers' National Bank, which is as follows: "The court erred in giving to the jury peremptory instructions to find for defendant bank; the undisputed evidence showing that the said defendant Merchants' National Bank was guilty of gross negligence in handling the draft given by defendants Potts & Lynch to the plaintiff for the sum of $1,500, and that by reason of said negligence on the part of said defendant bank the plaintiff was induced to pay out to defendants Potts & Lynch the said sum of $1,500."

What we have said in disposing of the ninth assignment of appellants Potts & Lynch, which complains of the giving of the peremptory instruction, practically disposes of this. As before shown, the Merchants' Bank acted with reasonable promptitude in its effort to collect before the lumber company became insolvent, and that thereafter the utmost diligence would have been unavailing. It is not true, as stated in the assignment, as has been hereinbefore shown, that the Farmers' Bank was induced to pay the $1,500 to Potts & Lynch through any negligence on the part of the Merchants' Bank; for it was indisputably shown by the evidence that the Farmers' Bank placed said amount to the credit of Potts & Lynch as soon as it was advised that the draft had been received by the Merchants' Bank for collection, and permitted Potts & Lynch to draw on this amount without waiting for results from an attempt to collect it. It was apprised by the letter written by the Merchants' Bank to it on June 25th that the draft had not been paid, and at this time Potts & Lynch had withdrawn the entire sum so placed to their credit, with the exception of a small balance, which they were thereafter permitted to withdraw. Just what this balance was the evidence does not disclose. The fact that the statements sent by the Merchants' Bank to plaintiff bank on the 1st days of July, August, and September, 1907, showing this sum as a credit to the latter's account, did not and could not affect the plaintiff bank to its prejudice, because it had paid the amount of the draft to Potts & Lynch before the first of the statements was received by it. The undisputed evidence shows that the Farmers' Bank had notice of the nonpayment of the draft in ample time before the close of the receivership to have presented the claim to the receiver, secure its approval, and collect the per cent. paid to the Valley Lumber Company's creditors. We think that the assignment and all propositions thereunder must be overruled.

The judgment of the court below in favor of the Merchants' National Bank is affirmed; and, because of the error indicated, the judgment in favor of the Farmers' National Bank against Potts & Lynch is reversed, and the cause remanded.

Affirmed in part. Reversed and remanded in part.