**ADKINS v. SMITHFIELD UNIT OF TEXAS HONEY BALL ASS'N.  (No. 11830.)***

Court of Civil Appeals of Texas.  Fort Worth.
Nov. 12, 1927.

Rehearing Denied Dec. 17, 1927.

**1. Courts ⚖⇒121(4)—District court had jurisdiction to determine validity of contract claims of melon growers assigned plaintiff, aggregating jurisdictional amount, though assignors retained interest.**

Where defendant entered into contract with melon growers' association to pay specified amount per crate for melons grown, district court had jurisdiction to determine validity of claims at suit of one of members to whom others had assigned their interests, where aggregate amount of claims shown in petition was within jurisdiction of district court, though assignment was made for purpose of suit and assignors retained equitable interest.

**2. Agriculture ⚖⇒6—Proof of assignment of claims of members of growers' association held not fatal variance under petition by member as assignee.**

Where suit was filed by member of growers' association for breach of contract seeking relief for himself as assignee of other growers who claimed to have sold defendant cantaloupes, and suit was not brought by association itself, proof of assignment did not involve fatal variance, notwithstanding allegation in petition that members were bound together as a unit.

**3. Agriculture ⚖⇒6—Recovery on oral agreement of member of growers' association to guarantee price held not precluded by prior written contract among members.**

Existence of original written contract for formation of association of growers of cantaloupes, whereby growers were to receive proceeds from sale, less brokerage commission, held not to prevent growers' recovery under subsequent oral contract of one of members, made after some dissention had arisen in the association, by which individual member and promoter orally agreed to buy melons at a guaranteed price of $1.25 a crate.

**4. Agriculture ⚖⇒6—Under offer made growers by member of association individually, no contractual liability attached to association or other members.**

Where allegations of petition and evidence in suit by assignee of growers against member of melon growers' association showed that defendant's subsequent contract entered into with growers was made for himself and not in behalf of association, defendant alone was liable and could not complain that suit was not filed against partnership association, or that judgment was rendered in favor of partner made codefendant.

**5. Partnership ⚖⇒206—Dismissal as to some of alleged partners sued, does not abate action as to others.**

Where suit is filed against members of an alleged partnership, and the facts show that one or more of the alleged partners is not liable, judgment may be rendered against one or more of members who are liable, and dismissal as to some does not abate action as to others.

**6. Partnership ⚖⇒206—Dismissal as to one partner sued does not discharge other partners' individual liability.**

Dismissal of action against partners as to one of partners sued, while it constitutes a dismissal of any right of action against the partnership as such, does not discharge the individual members of the partnership.

**7. Agriculture ⚖⇒6—Member's offer at association meeting to purchase crop held binding irrespective of whether all members were present at meeting.**

Where member of association of melon growers made general offer to members to buy melons accepted by packers and pay specified amount, intended that offer should extend to all members, and sought to deal with single person appointed by unit, binding contracts arose, with all members whose melons were accepted, irrespective of whether all of such members were present at meeting at which offer was made.

**8. Agriculture ⚖⇒6—Petition for breach of contract to purchase crop held not defective for failure to allege contracts with individual members of growers' association.**

Failure of petition of assignee of members of growers' association to allege individual contracts between each member and defendant for purchase of melons *held* not fatal where defendant who was member made general offer at meeting to purchase members' melons and required that individual be appointed to represent unit in dealing with him.

**9. Agriculture ⚖⇒6—Petition for breach of contract to purchase crop held sufficient without showing quantity furnished by individual members of growers' association.**

In suit by assignee of members of melon growers' association against member offering in meeting to purchase all of members' melons, based on defendant's breach of contract, petition was not required to specify number of melons furnished by each individual grower.

**10. Trial ⚖⇒350(4)—Issue submitted as to whether member of growers' association sued for breach of contract guaranteed specified price for melons held in proper form.**

Special issue submitted, in action for member's breach of contract to purchase melons of association of growers, as to whether defendant prior to shipment of melons guaranteed specified price per crate, *held* in proper form and not objectionable as submitting evidentiary instead of an ultimate fact.

**11. Trial ⚖⇒350(2)—Jury finds facts on trial upon special issues.**

Jury, upon a trial upon special issues, are required to find the facts.

**12. Trial ⚖⇒350(4)—Special issue whether association member made contract with growers to purchase melons is improper as submitting mixed question of law and fact.**

In action for breach of member's contract with other members of association of melon growers, court could not properly submit question whether defendant made contract with

growers to pay them specified price for melons, since such question involves determination of both law and fact.

**13. Trial ⊂⊃350(4)—Special issue as to defendant's agreement for submission of question of marketability of melons purchased held proper under pleadings alleging their delivery and acceptance under contract.**

In action by assignee of claims of growers' association against member for breach of contract to purchase melons, submission of issue as to agreement of defendant to submit question of marketability to packers *held* proper under allegation in petition that defendant made offer which members accepted, and that they subsequently delivered melons, and that defendant accepted the same.

Error from District Court, Tarrant County; H. S. Lattimore, Judge.

Action by J. D. Crane, as assignee of members of the Smithfield Unit of Texas Honey Ball Association, against T. H. Adkins. Judgment for plaintiff, and defendant brings error. Affirmed.

Levy & Evans, of Fort Worth, for plaintiff in error.

Houtchens & Clark, of Fort Worth, for defendant in error.

BUCK, J. In the year 1923, or prior thereto, H. M. Means, demonstration agent for Tarrant county, Ireland Hampton, then the manager of the Chamber of Commerce of Fort Worth, J. W. Lee, and T. H. Adkins, formed a partnership to be operated under the trade-name of Texas Honey Ball Association. Lee was to furnish to the farmers, through the Fort Worth Chamber of Commerce, the seed of a hybrid cantaloupe, a cross between the Honey Dew cantaloupe and the Cannon Ball cantaloupe. Means was to look after the planting and cultivation of the cantaloupes by the farmers. Hampton was to look after the advertising and Adkins was to sell them on the market. Units of the Texas Honey Ball Association were organized in various portions of north Texas. In the fall of 1923, some of the members constituting the Texas Honey Ball Association went to Smithfield and talked to some of the farmers about forming a unit. This was done, and some 60 or 70 farmers agreed to go into the unit and to plant seed of the Honey Ball cantaloupe. The Texas Honey Ball Association, hereinafter called association, required each member of the unit to sign a contract, a copy of which with blank spaces unfilled is hereinafter set out:

"I, ——, of Smithfield Local of the Texas Honey Ball Growers' Association, have this day received seed of the Texas Honey Ball melon to plant —— acres for marketing during the season of 1924. I agree to plant, cultivate and gather these melons according to the advice of the field manager of the Texas Honey Ball Association. I agree to abide by the inspection of the association as to what melons are merchantable. I will deliver to the association for packing at —— all the melons which I grow during the year 1924. I further do hereby ratify and confirm all the terms and conditions of a contract between the Texas Honey Ball Association and —— local of the Texas Honey Ball Growers' Association, dated ——, 1923.

"The consideration for this agreement is that the Texas Honey Ball Association will furnish to my local and to me crates and labels and will pack and market the melons grown by me. The actual cost of packing crates and labels shall be deducted from the proceeds of the melons when sold. A sales brokerage of 15 per cent. shall also be retained by the association, which shall be full payment for their services.
"[Signed] ——."

The association required that at least 250 acres be planted in cantaloupes by the unit. Some 60 odd farmers agreed to go into the unit and plant some 300 acres in the Honey Ball melons. John White was elected president and L. A. Hightower was elected secretary of the unit. Subsequently J. D. Crane was elected president in the place of Mr. White.

It was agreed between the unit and the association that the growers would have to pay 10 cents for each crate, 10 cents for packing the crates, and 15 per cent. for commission of the broker selling the melons. Some time in July, 1924, Mr. Means went out to the Smithfield community and told the members of the unit there that the partnership of the association had had differences, and that the partnership had been dissolved, and that Adkins and Hampton were on one side and Means and Lee were on the other side. According to the testimony in the trial, Means told the growers that the association had split up, and sought to get them to agree to sell to or through him and Lee. The unit called a meeting and invited Adkins and Hampton to come out. Adkins went. Crane stated to the members of the unit the fact of the split between the partners of the association, Means and Lee on the one side and Adkins and Hampton on the other, and stated that Means and Lee said they constituted the Honey Ball Association, and Adkins and Hampton said they constituted it, and further said:

"Gentlemen, the melons are beginning to ripen and if we don't get some relief we are going to have to say we are it and ship some other way and throw them (the Honey Ball Association) over."

Mr. Adkins, it is claimed, said:

"If you will give me the floor, I can clear the whole thing in a few minutes."

It is stated that he further said:

"It is like the chairman said; they have split; Mr. Means and Lee on one side and Hampton and I on the other."

He told the reason why. He said they had incurred expenses keeping up the business and Means and Lee refused to contribute a nickel to it and he had been out over a thousand dollars in advertising and they refused to bear their part of the expense. He further said:

"As far as you people are concerned, you are not concerned in that, for we are the Honey Ball Association, I am big enough to take care of you myself. I have my warehouse full to the top with crates already bought; I have got more Honey Balls sold than all we could produce."

He showed why he thought Means was in the wrong and said:

"I cannot throw him out, but he will be just a dead man. I will carry out the contract to buy your Honey Balls at $1.25 per crate f. o. b. Smithfield. I will guarantee that."

When he was asked by Crane what assurance the farmers would have that he would do what he promised, he replied:

"I have executed a $10,000 bond guaranteeing them, and have executed a $10,000 bond, so I will have to."

A vote was taken by the farmers present —some 50 or more—and they unanimously agreed to accept the proposition of Adkins. It is stated in the evidence that Adkins said he could sell every Honey Ball melon the unit could grow to one man, but would not do it; that the Honey Ball was the greatest melon in the world and he would divide them around for advertising purposes; that he was big enough to handle the proposition by himself. Adkins employed a man named Parker as field manager, while the melons were ripening, and he determined when the melons should be gathered.

Later, Adkins brought out to the meeting of the unit two men, who he claimed were expert packers of cantaloupes, and it was agreed by him that if the growers would employ these men to do their packing, under the shed packing system, and would not attempt to pack the melons themselves, and pay them ten cents a crate therefor, that he would accept the inspection of the packers as to whether the melons were marketable or not. The melons were gathered and delivered to the packers at Smithfield, and during the season some 22 carloads are alleged to have been shipped, consisting of some 13,482 crates. During the 1923 season, the Honey Ball cantaloupe was very popular and used by cafés, hotels, dining cars, and other customers. Based on this record, Adkins had contracted to sell and deliver for the 1924 season all the melons to be raised by the Smithfield unit and other units. But upon the delivery of some of these melons, they were found unfit, and the patrons of the dining cars, cafés, hotels, etc., did not like them. It is claimed that they were not marketable;

that they were sun-baked, etc. As a consequence, many of the carload lots were refused, upon arrival at destination, and the returns on the shipments of the 22 carloads to the growers amounted to $1,156.66. The members of the unit claimed they were entitled to a return on all the crates delivered to the packers, and, as alleged, accepted by the packers on behalf of Adkins and Hampton, while Adkins claimed that he never agreed to purchase the melons at $1.25 a crate, or at any other price, but merely agreed to sell them as a broker, under the contract as originally entered into between the growers and the Honey Ball Association.

This suit was filed by J. D. Crane, assignee of some 49 members of the Smithfield unit, against T. H. Adkins and Ireland Hampton. Ireland Hampton went out of the case on the court's finding that he was not liable.

The cause was submitted to a jury on special issues, and the jury found in answer thereto as follows: (1) That the defendant Adkins at a meeting of the Honey Ball growers at Smithfield in 1924, prior to the shipment of the melons by the said growers, stated to them that he would guarantee to them a price of $1.25 per crate; (2) that the defendant Adkins at a meeting of the Honey Ball growers at Smithfield in 1924, and prior to the shipment of the melons by said growers, stated that he would accept the melons packed by these two packers; (3) the court inquired how many crates of melons were included in the carload lots shipped at Smithfield by 50 named growers. The jury answered, "11,715 crates."

Upon this verdict the court found that J. D. Crane was entitled to recover from defendant Adkins $1.25 per crate for 11,715 crates, or the total sum of $14,643.75, less the reduction for commissions of 15 per cent., 10 cents for each crate and 10 cents per crate for crating. Then from this difference a further sum of $1,156.66 was subtracted, being the amount paid to the growers as a return on their shipments. The total amount for which the judgment was rendered was $8,947.63. From this judgment Adkins has appealed.

## Opinion.

[1] The first proposition in the brief of plaintiff in error, hereinafter called appellant, urges that the trial court had no jurisdiction to hear and determine the suit of defendants in error, hereinafter called appellees, save, perhaps, in so far as the same sought to enforce the claims of the assignors whose claims were for amounts, perhaps, within the jurisdiction of the district court. All of the 49 assignors assigned their claims to J. D. Crane, and A. G. Meacham, Meacham subsequently assigning any interest he had in such claims to his coassignee, J. D. Crane. All of these 49 assignors were shown to have assigned their claims to Crane. Some of

them testified that they expected Crane, if he secured a judgment against defendants, or either of them, to pay the witnesses who testified to· this effect their proportionate part of the recovery. It is urged that this testimony shows that the assignments to ·Crane were merely for the purpose of suit, and that the assignors did not contemplate and intend that the assignee, plaintiff below, should have the title and right of possession to such claims. The aggregate amount of the claims shown in the petition was within the jurisdiction of the district court, and the amount of the judgment rendered was also within such jurisdiction. In Knight v. Holloman, 6 Tex. 153, our Supreme Court said:

"The objection that the plaintiff was not the real owner of the note cannot be maintained. This case cannot be distinguished, in principle, from ·those cases, heretofore decided by this court, ·in which this objection was considered. * * * Here, as in those cases, the legal title to the note was in the plaintiff; and we there decided that the person having the legal title, may maintain the action, although the equitable ownership may be in another."

In St. L. S. W. Ry. Co. v. Jenkins, 89 S. W. 1106, by the San Antonio Court of Civil Appeals, it is said:

"As to the third objection we will say, in view of another trial, that it is immaterial so far as the defendant is concerned whether there was any consideration for the transfer or not. That was purely a matter between plaintiff and his mother. It was sufficient to protect the defendant against any claim that Mrs. Grimes may make for damages to her interest in the crop, if it should be made a basis of recovery by plaintiff."

See Kenedy ·Town & Improvement Co. v. First National Bank (Tex. Civ. App.) 136 S. W. 558; Tomerlin v. Mittendorf (Tex. Civ. App.) 286 S. W. 477, where the court said:

"This contention is that appellee's claim, being for only $200, was not within the jurisdiction of the district court, and that the claims of his 12 assignors, which varied in amounts from $100 to $500 each, sounded in tort, and each arose from a separate and distinct transaction, constituted a separate cause of action, and could not be joined in one suit. * * * If the court could have consolidated them, certainly there was no error in joining all of them in a single suit. Such matters are vested largely in the discretion of the trial court, and will not be reviewed on appeal, unless there has been manifest injury."

See Mayhew v. Valley Wells Truck Growers' Ass'n (Tex. Civ. App.) 216 S. W.˙ 225; Frye v. Wayland (Tex. Civ. App.) 228 S. W. 975; ·Pearce v. Wallis, 58 Tex. Civ. App. 315, 124 S. W. 496; Western Union Tel. Co. v. Morrow (Tex. Civ. App.) 208 S. W. 689, writ ·of error refused, in which the court said:

"It has been the policy of the Texas courts, under our liberal procedure, to discourage a multiplicity of suits and to favor a joinder of parties and causes of action when injury will not likely result. Appellant has shown no ·injury in this case; but, on the contrary, we may presume that in the matter of costs the joinder has resulted in pecuniary benefit to the company."

See G. H. & S. A. Ry. Co. v. Heard (Tex. Civ. App.) 91 S. W. 371, writ of error refused; G. W. T. & P. Ry. Co. v. Browne, 27 Tex. Civ. App. 437, 66 S. W. 341; 1 Corpus Juris, 1074, 1082, 1095; Texas Brewing Co. v. Bisso, 50 Tex. Civ. App. 119, 109 S. W. 270, writ of error refused.

[2] By propositions 2 to 11 appellant complains of a fatal variance between the allegations of the petition and the proof, in that, as claimed, the Smithfield unit of the Texas Honey Ball Association sued. That the unit was not a partnership, a corporation or a joint-stock company, and had no right to sue as a unit. That any right the plaintiff Crane had to sue for the various claims of assignors was based on the assignments made to him. That therefore the trial court erred in not giving a peremptory instruction. The original petition is not in the record, but according to the second amended original petition, upon which the plaintiff went to trial, suit was filed by J. D. Crane for himself and as assignee of the various growers who claimed to have sold to the defendant cantaloupes. It was alleged that the association required the banding of the different growers together in a unit, but we do not understand that the suit was as a unit, but that the plaintiff in the petition was J. D. Crane. There are allegations in the petition of the formation of the unit, the conversations between the unit and Adkins, etc. But the prayer is on behalf of plaintiff J. D. Crane. Therefore we overrule these propositions.

[3] It is urged that plaintiff Crane and his assignors had each entered into a contract with the Texas Honey Ball Association, by reason of which each member of the unit so signing agreed to plant a certain number of acres of melons for the marketing season of 1924, and agreed to cultivate and gather these melons according to the advice of the field manager of the association, and agreed to abide by the inspection of the association as to what melons were merchantable, and to deliver to the association at Smithfield all of the melons grown by the members, and that the Honey Ball Association would furnish to the growers the crates and labels and would pack and market the melons grown and would charge 15 per cent. for selling them; that the contract alleged on the part of plaintiff below was in violation of this contract, which latter contract was in writing; and that no oral contract could be successfully urged which in effect violated a written contract pertaining to the same subject. The plaintiff alleged that the members of the unit had signed different growers

or seed contracts; that by the terms of the contract it was contemplated, evidently, that another contract would be submitted to the growers but this was not done; that when the growers learned that there had arisen dissension among the members of the association and had called a meeting and had invited Adkins to be present; that Adkins made a separate contract, on behalf of himself and his codefendant Hampton, to purchase the melons outright for $1.25 a crate, and to charge them for the crates and packing, and 15 per cent. as a brokerage commission. This contract had nothing to do with any contract evidenced or contemplated by the original contract in writing, a copy of which is hereinabove set out.

[4-6] Nor do we think that appellant can complain that the suit was not filed against the partnership association. No allegation was made that Adkins represented the association in making the alleged offer for himself and Hampton, and the court, properly we think, rendered judgment for Hampton. Therefore the appellant was the only one under the allegations of the petition and the evidence against whom a sustainable judgment could have been rendered. A suit may be filed against the members of an alleged partnership, and where the facts show that one or more of the alleged partners were not liable, judgment may be rendered against the members of the partnership shown to be liable. In Burton v. Roff, 275 S. W. 273, by this court, affirmed by the Supreme Court in 292 S. W. 159, this court held that in a suit against partners and individual members thereof, dismissal of one partner as defendant did not abate the whole suit so that judgment could not be rendered against the partners indicated as defendants. While the dismissal of one of the partners constituted a dismissal of any right of action against the partnership as such, yet it did not discharge the other individual members of the partnership. In the instant suit there was no prayer for a judgment against the partnership, but for a judgment against the defendants Adkins and Hampton, jointly and severally. Therefore, there is no merit in this contention.

[7-9] Exception is also urged, in assignments 12 to 14 inclusive, that the trial court erred in failing to sustain the special exceptions urged to that portion of the petition alleging the cause of action, inasmuch as the petition failed to allege the contracts, if any, between each individual assignor and the appellant, and failed to allege the melons furnished by each individual assignor. If Adkins promised to each member of the Smithfield unit that he would buy the melons raised on the members' farms and accepted by the packers, and pay therefor $1.25 a crate, and intended that this offer should include every member of the unit, then the delivery of the melons by the different mem-

bers of the unit at Smithfield to the packers selected by appellant, constituted an acceptance and it would make no difference whether all of the members of the unit were present at the time the offer was made or not. It was a general offer to all the members of the unit. Nor do we think it was essential that the evidence show that some of the members of the unit, whose claims were assigned to the plaintiff below, learned from Adkins at other times than at the meeting the terms of his offer. The pleadings and the evidence sustain the theory that Adkins required the unit to appoint some one to deal with him, and that J. D. Crane, the president of the unit, was the one. Therefore, we think it was not necessary that the petition specify the terms of each individual contract. They were all the same. Nor do we think it necessary to specify the number of melons furnished by each individual grower. Therefore, assignments 12, 13, and 14 are overruled.

[10-12] Propositions 17 to 26 all pertain to the giving of special issue No. 1, which was:

"Did the defendant, Adkins, at a meeting of the Honey Ball growers in Smithfield, in 1924, prior to the shipment of melons by said growers, state to them that he would guarantee them a price of $1.25 per crate?"

The answer was "Yes." It is urged that this was an evidentiary fact, and not an ultimate fact. The jury, upon a trial upon special issues, are required to find the facts, and one of the necessary facts to be found by the jury in the instant case was whether Adkins had made this proposition to the farmers of Smithfield or not. If he did not make it, the plaintiff's case failed. If he did make it, and the jury answered other questions propounded by the court so as to sustain a recovery, judgment was properly rendered for the plaintiff. It would have been improper, as appellant suggests ought to have been done, to submit to the jury a mixed question of law and fact, to wit, Did Adkins make a contract with the growers to pay them $1.25 a crate? All of these propositions are overruled.

[13] Propositions 27 and 28 have reference to the submission by the court of issue No. 2. It is urged that this issue was not pleaded, and therefore the plaintiff was not entitled to the submission of the issue. The question as to whether there was an agreement to submit the question of marketability of the melons to the chosen packers involved the question as to whether the growers complied with the terms of the contract alleged to have been entered into by Adkins and the members of the unit at the time of the meeting, on or about July 21, 1924. It was alleged in plaintiff's petition that Adkins offered to purchase the melons at a designated price less certain charges; that the members of the unit voted on the matter and accept-

ed the offer; that the members of the unit subsequently delivered to defendant 13,482 crates, and that defendant accepted the same. This issue complained of is merely to the question whether or not appellant accepted the melons tendered. We see no valid objection to its submission.

Other assignments are included in appellant's brief, there being 74 in all, and we would like to discuss each one of the assignments presented; but lack of time prevents. We have examined each and every assignment relied on and do not find any reversible error in any of them. Therefore the judgment of the trial court is affirmed.