SECURITY MORTGAGE & TRUST CO. v. SAMUEL CARUTHERS ET AL.

No. 870.

1. Mechanic's Lien—Demurrer to Petition—Allegations of Answer.

Plaintiff sued to enforce a mechanic's lien which attached under a contract made with one C., since deceased, while C. owned the land. Plaintiff demurred to the petition, on the ground that it failed to show why the personal representatives or heirs of C. were not necessary parties. The averments of defendant's answer showed that neither the estate of C. nor his heirs had any interest in the suit, the interest of C. in the property having been sold out under a deed of trust. Held, that such averments in the answer could properly be considered by the court in passing upon the demurrer, as supplying the want of such allegations in plaintiff's petition, and that the demurrer was properly overruled.

2. Same—Owner of Land Subject to Vendor's Lien.

A vendee of real estate, where part of the purchase money is unpaid and a lien is expressly reserved to secure its payment, is nevertheless the owner of the land within the meaning of the statute (art. 3164, 2 Sayles' Civ. Stat.), and as such owner is authorized to make a contract fixing a mechanic's lien on the land.

3. Same—Pleading—Proof Admissible Under General Denial.

In an action to enforce a mechanic's lien in which no personal judgment is sought, the defendant may under the general denial show that the land was the business homestead of a married man, and that the lien was invalid because the contract under which it is claimed was not executed by the wife.

4. Same—Waiver of Lien and Estoppel to be Pleaded in Replication.

Where the defendant in a suit to enforce a mechanic's lien sets up a prior mort-

gage lien on the property, a waiver of such prior lien or estoppel to claim it, in or-
der to be available to plaintiff, must be specially pleaded by him in reply.

**5. Same—Priority of Lien—Waiver and Estoppel.**

Where a mortgagee of land assents to the erection of a building thereon, and tells
the contractor to proceed with the work, this does not of itself constitute a waiver
of the priority of the mortgage lien, nor estop the owner of it from claiming that
it is superior to the mechanic's lien of the builder.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*Leake, Henry & Reeves* and *D. E. Greer,* for appellant.

*Thompson & Thompson,* for intervenors, Gary & Smith.

*R. E. Cowart, Watts, Aldredge & Eckford,* and *Geo. H. Plowman,*
for appellees.

The briefs of counsel in this case failed to reach the Reporter with
the record.

FINLEY, ASSOCIATE JUSTICE.—The statement of the case as made
by appellant is not objected to by appellees, and will be accepted by
us as a correct statement. It is as follows:

This is a suit brought by Samuel Caruthers to enforce a mechanic's
lien on a two-story brick store, fronting 43½ feet on Commerce Street,
and running back to Jackson Street 200 feet. Plaintiff's petition al-
leged, in substance, that on September 15, 1891, he made a contract in
writing with one J. B. Cowan by which he agreed to build and com-
plete, in accordance with the plans and specifications made a part
thereof, a two-story brick building on said lot, and to furnish all the
brick, stone and wood work necessary for its completion. That there-
upon he entered upon the construction of said building, and completed
the same on December 21, 1891. That Cowan was to pay him for
said building $11,850 when the same was completed, according to the
certificate of the architect.

That he was paid $2660, leaving a balance due him of $9189, and
that on January 22, 1892, he filed in the office of the county clerk of
Dallas County his contract, with statement of the amount due there-
on, and the property upon which he sought to fix his mechanic's lien,
and that the same was duly recorded, and thereby he secured a me-
chanic's lien upon said lot of land and the two-story brick building
thereon, and that the same constituted a first and prior lien upon said
building and land. That said Cowan was the owner of said land at
the date of the contract. That Cowan died April 20, 1892, insolvent,
leaving his wife, Mrs. J. B. Cowan, his widow and survivor. That
Cowan's estate was hopelessly insolvent, that no administration had
been opened, and that none was necessary. Petitioner made S. B.
Hopkins, W. J. Betterton and the Security Mortgage and Trust Com-

pany, a private corporation organized under the laws of Texas, having its domicile in the City of Dallas, Texas, defendants, alleging that they claimed some sort of an interest in said building and land, which he alleged was inferior to his lien, and prayed that his debt be established and his mechanic's lien foreclosed upon the building and land, and that the building be sold separate from the land, and the purchaser placed in possession thereof, with right to remove it within a reasonable time.

After the institution of this suit, Gary & Smith intervened therein, and by their plea alleged substantially as follows, viz.: That September 15, 1891, they, being partners, made a contract with J. B. Cowan, the owner of said lot of land, by which they agreed to furnish the material to do the brick and stone work necessary to complete a two-story brick building on said lot in accordance with the plans and specifications made a part thereof, for which Cowan agreed to pay them $3110 upon completion of the work, under instruction of the architect, A. J. Armstrong. That they completed their work and finished the building and fully performed their part of the contract to the satisfaction of the architect, on or about December 10, 1891, and the same was accepted by the architect and Cowan on that date, said Cowan then being the owner of said land. That the contract provided that payment should be made every two weeks for account of pay rolls and material only, the balance to be retained until final completion of contract and work. That on January 23, 1892, he had an accounting with Cowan for the work, and after allowing him credit for all payments, he was found to be then indebted in the sum of $1476.34, and afterwards, on February 2, 1892, signed a written statement to that effect. That on April 9, 1892, and within four months from the time said indebtedness accrued, they filed in the office of the county clerk of Dallas County, their contract, with the sworn statement of the amount due thereon, a description of the property upon which they sought to fix their lien, and thereby secured a lien on the land and said two-story brick building, which they alleged was a first and prior lien on said land and the two-story brick building thereon, a copy of the contract being attached to their plea of intervention and made a part thereof. That about April 20, 1892, said Cowan died, leaving his survivor in the community, Mrs. J. B. Cowan. That said Cowan died insolvent, and no administration was had or necessary on his estate.

That the plaintiff, Samuel Caruthers, and the Security Mortgage and Trust Company, S. B. Hopkins and W. J. Betterton, have some sort of pretended claim or lien, or interest in or upon said lot or improvements, which is inferior to intervenors' lien; and prayed that they have judgment establishing their debt and lien on said lot and building, and that same be foreclosed, and that the building be sold separate from the lot, and purchaser placed in possession thereof, with right to remove it within a reasonable time.

The defendant Hopkins disclaimed all interest in the land.

Mrs. J. B. Cowan, the widow of J. B. Cowan, disclaimed, and also filed general demurrer and general denial.

The defendant W. J. Betterton filed general demurrer and denial, and specially that he owned the property described in plaintiff's petition, and further he adopted the answer of the Security Mortgage and Trust Company.

The Security Mortgage and Trust Company, by its first amended original answer, demurred generally to plaintiff's petition, and specially thereto, because: (1) The petition does not show that plaintiff took the several proceedings and performed the several acts necessary to be done in order to acquire a mechanic's lien. (2) The petition does not show that there is no necessity for administration on the estate of J. B. Cowan. Said defendant further filed a general denial, and specially denied that plaintiff had, or ever had, any mechanic's lien on the property described in his petition, and filed a special answer to plaintiff's petition, substantially as follows:

"That on or about July 7, 1890, the lot of land in question was the property of one W. J. Betterton, and at that time there stood thereupon a two-story brick store, and about that time Betterton and wife sold the same to one H. C. Burlew for $40,000,—$20,000 of the consideration of the purchase being two notes of $10,000 each, payable to the order of the Security Mortgage and Trust Company, with 8 per cent interest, due July 1, 1895, and July 1, 1898. That the deed from Betterton and wife to H. C. Burlew for this property retained an express lien on the property in favor of the Security Mortgage and Trust Company to secure the payment of these two notes. And at the same time said Burlew executed a deed of trust on said premises to J. T. Dargan, trustee, to secure the payment of said notes, and it was stipulated therein if any of the interest installments on said notes should mature and remain unpaid for more than five days, then at the option of the legal holder of said notes, the whole indebtedness should at once become due, which deed of trust was duly recorded on or about the date of its execution. That thereafter, to-wit, July 14, 1890, said Burlew sold and deeded said premises to W. J. and C. L. Betterton for the consideration of $20,000 cash, and the said W. J. and C. L. Betterton assuming the payment of said notes executed by Burlew to said Security Mortgage and Trust Company; the deed of the said Burlew to the said W. J. and C. L. Betterton reserving an express lien upon said lot and premises in the following terms, viz.: 'It is expressly agreed and stipulated that a vendor's lien is retained against the above described property, premises and improvements, until the above described notes and interest thereon are fully paid according to their face, tenor and effect, when this deed shall become absolute.'

"That thereafter, on May 11, 1891, W. J. and C. L. Betterton sold and deeded said land and premises to S. B. Hopkins, for the cash consideration of $20,000, and the said Hopkins' assumption of the payment

of Burlew's said two notes, said assumption being expressly stated in the deed made to Hopkins by the said Bettertons.

"That on June 22, 1891, Hopkins sold and deeded the said land and premises to J. B. Cowan for the consideration of $22,500 cash, and the assumption by the said Cowan of Burlew's said notes above described, the assumption of the payment being expressed in the face of the deed made by Burlew to Cowan.

"That upon Cowan's purchasing said property and being liable for the payment of said notes, he took out four policies of insurance on the storehouse situated on said land, each for the sum of $2500, and there was attached to and made a part of each policy the written provision to the effect that if any loss or damage should occur under the policy, the same should be payable to J. T. Dargan, trustee, for the Security Mortgage and Trust Company, as its interest might appear, and that the insurance under the policy, so far as it affected the interest of this defendant, should not be invalidated by any act or neglect of the said Cowan.

"That on or about July —, 1891, the storehouse on said lot was practically destroyed by fire, and by reason thereof this defendant had a valid, incontestible claim against each of said insurance companies for the sum of $2500, and against the collection of which the insurance companies could interpose no defense.

"That shortly after the destruction of said building, the agents of the insurance companies claimed that they could reinstate the building for a sum less than $10,000, the amount of insurance on the old building. The said J. B. Cowan was desirous of having a new and better building erected, the insurance companies claiming that if they built they would erect a fac simile of the building that was destroyed, but as Cowan desired a better building, he preferred to have one erected in order that some slight changes might be made, provided this defendant would forego the collection of said policies and consent for Cowan to have a new building built. That this defendant was willing to have a new building placed upon said lot, provided it was substantially as good as the one destroyed, and with this understanding Cowan and three of the insurance companies adjusted the loss under said policies, whereby each of the three insurance companies agreed to pay $2250 when the new building should have been completed. After this understanding and agreement was entered into between Cowan and three said insurance companies, Cowan and the plaintiff, Samuel Caruthers, came to this defendant's office, bringing with them the adjustments and agreements so made with the insurance companies, and the said Cowan thereupon represented to this defendant that if it would release its claim to said policies and insurance, that the plaintiff in this suit, Samuel Caruthers, would rebuild the storehouse substantially as it stood before the fire, free from any lien or claim for the same, and it was therefore, after consideration, agreed between the said Cowan, the plaintiff Caruthers and this defendant, substantially as follows:

That is, the said J. B. Cowan agreed that he would pay to this defendant $800, interest that was then due on said notes of Burlew, and agreed to have a new building built on said lot substantially the same as the old one, free from any lien or charge thereon for material or labor, and the plaintiff Caruthers, as contractor, in consideration of this defendant's agreement as hereinbefore stated, agreed that he would build said new building for Cowan, free from any lien or charge thereon for labor and materials, and would look alone to said Cowan and the policies of insurance for his pay, and thereupon this defendant, in consideration of the undertakings and agreements of Cowan and Caruthers, as aforesaid, agreed that if said Cowan would have built a new building on said lot substantially as good as the old one, free from any lien or charge thereon for labor and materials, then this defendant would desist and not collect the money due it on said insurance policies, and would surrender the same and all interests therein, thus giving Cowan unconditional control of said policies; that whatever materials or labor Caruthers did or furnished in the erection of the new building, was done in pursuance of the agreement above stated, and in consequence of said agreement he is now estopped from setting up or establishing against said building any mechanic's or other lien thereon, because this defendant fully complied with its part of the agreement and desisted from the collection of said policies of insurance and surrendered and relinquished all right, title and claim thereto, and the same were used by Cowan as collateral security with the National Exchange Bank of Dallas for procuring money for the purpose of paying for the construction of the new building.

"That by reason of the premises, plaintiff Caruthers waived all right that he might have otherwise had to a mechanic's lien on said building. That this defendant would not, but for said agreement, have surrendered its interest in said policies, but on the contrary would have collected the same for its own use, amounting to $10,000.

"That on or about January 9, 1892, the said Cowan endorsed said insurance policies to the National Exchange Bank of Dallas, which thereafter, in the Dallas District Court, sued thereon for the benefit of itself and plaintiff herein, as the defendant is advised and charges; that said defendant would not have surrendered said policies but for the agreement on plaintiff's part that he would erect said new building, looking alone to Cowan and said insurance policies for his pay; that it would be a fraud on plaintiff's part for him to now assert any lien or claim against said building as against this defendant, or its privies in estate, but, by his acts, is estopped from so doing.

"That the said Burlew, on or about January 1, 1892, became and continued insolvent, and on that date defaulted in the payment of interest on said notes, and under the terms of the deed of trust defendant elected to declare both said notes due, and had the trustee Dargan to proceed to foreclose the trust deed on the first Tuesday in March, 1892, by making sale of said lot and premises according to the terms

of said deed of trust, and at said sale the said W. J. Betterton became the purchaser of said property for the sum of $15,000, for which he executed a note and deed of trust on said lot and building to this defendant, with the guaranty from this defendant that it would indemnify and hold him harmless against any lien that might be asserted against said property, paramount to the lien of this defendant under its deed of trust from Burlew.

"That this defendant acted in the most perfect good faith with Cowan and the plaintiff in agreeing to the terms under which said new building was erected and in surrendering said insurance policies, and prays that its lien on said lot and premises and new building be held paramount to all other liens and claims, and that it have general relief.

"Defendant further pleads that if plaintiff furnished any material or labor that entered into the new building, he had been paid therefor out of the money furnished by the National Exchange Bank, which was furnished by reason of this defendant releasing and relinquishing its interest in said insurance policies, and under the understanding and agreement fully set forth above."

The Security Mortgage and Trust Company demurred generally to the plea of intervention of intervenors Gary & Smith, and filed a general denial, and denied that they ever did the work claimed in their plea, or had any mechanic's lien on the property involved in this suit; and by a special answer answered their plea of intervention substantially as they had answered the plaintiff's petition. The case was tried early in December, 1893, by a jury of ten men, who, having been charged by the court, returned the following verdict, viz.: "We, the jury, find for plaintiff, Samuel Caruthers, in the sum of $10,268.90, being for $9189.20 principal, and $1079.73 interest for 23½ months, at the rate of six per cent per annum; and we further find for plaintiffs Gary & Smith, intervenors, in the sum of $1649.89, being $1476.34 principal, and $173.47 interest for 23½ months, at the rate of six per cent per annum. The above being liens on property described as follows: Part of lots 3 and 6, block 19, in the old town of Dallas, and block 42 according to the official map of the City of Dallas, Texas, being 42½ feet on Commerce Street and extending back 200 feet to Jackson Street, together with all the improvements thereon."

Thereafter, on December 4, 1893, judgment was rendered in behalf of plaintiff Caruthers and intervenors Gary & Smith, establishing and foreclosing their liens upon the building and lot in accordance with the verdict and prayer of plaintiff's petition—from which judgment this appeal is prosecuted.

*Opinion.*—The first and second assignments of error complain of the court's action in overruling appellant's "general demurrer" and "second special exception" to plaintiff's petition. The special exception referred to, objected to the petition "because said petition does not show that there is no necessity of administration on the estate of J. B. Cow-

an, deceased." The two assignments are presented together, and under them two propositions are urged, as follows:

"1. The statute relating to the estates of deceased persons requires all liens upon properties of their estates to be enforced in the Probate Court.

"2. No lien can be enforced upon the real estate of an intestate unless the legal representatives of the estate are before the court."

Appellant's second special demurrer was in effect only a general demurrer. It challenged the substance of the petition as being legally insufficient. The petition did not seek the recovery of a money judgment against the Cowan estate, and the pleadings of appellant showed that neither Cowan's estate nor his heirs had any interest in the property. The averments in the answer of appellant showing that Cowan's estate and his heirs had no interest in the suit could properly be considered by the court in passing upon the demurrer, as supplying the want of such allegations in plaintiff's petition. Lyon & Gribble v. Logan, 68 Texas, 524. As it appears from appellant's pleadings that Cowan's estate and his heirs have no interest in the property upon which the lien is sought to be foreclosed, the question whether there exists any necessity for an administration upon the estate, or whether all the heirs have been made parties to the proceeding, are inquiries which do not properly arise upon the demurrer; and the court did not err in overruling the same.

The next assignment of error is directed at the refusal of this special instruction: "In addition to the charges already given you, the court charges you that, inasmuch as it appears from the evidence that J. B. Cowan, at the time he made the contracts read in evidence, between himself and Samuel Caruthers, and the other contract, between himself and Gary & Smith, ·was not the owner of the paramount title of the land and premises·on which said new building was erected, the paramount title then being in one H. C. Burlew, you are therefore instructed that no mechanic's lien was or could be created upon said new building by said J. B. Cowan; and therefore, you will find your verdict for the defendant, the Security Mortgage and Trust Co."

No person other than the owner or proprietor, his agent, trustee, contractor or contractors, under our statutes, is authorized to make contracts fixing liens on lands, houses, buildings, fixtures or improvements such as are here under consideration. 2 Sayles' Civ. Stats., art. 3164. Is the vendee of real estate the owner, in contemplation of the statute, when part of the purchase money is unpaid and a lien is expressly reserved to secure its payment? In case of Insurance Co. v. Ricker, 31 S. W. Rep., 249, we discuss this doctrine, review the decisions, and hold that the vendee, with outstanding purchase money notes and the vendor's lien expressly retained to secure their payment, is the owner of the land in the sense in which the term owner is commonly used. Prior lienors are protected by the statute. Article 3171 provides, that "any lien, incumbrance or mortgage existing on the land

or improvements at the time of the accrual of the lien herein provided for shall not be affected thereby." The construction contended for by appellant is unnecessary to the protection of prior lienors, would be an illiberal interpretation of the language of the statute, and would result in seriously obstructing the improvement and development of property throughout the State. The assignment can not be sustained.

Appellant assigns as error the action of the court in refusing the following special charge: "In addition to the instructions already given you, the court charges you, on behalf of the Security Mortgage and Trust Company, that, inasmuch as it appears from the uncontradicted testimony in the case that the land and premises on which the building described in plaintiff's petition was erected was the place of business of J. B. Cowan prior to the time the building then thereupon was destroyed by fire, and it further appearing that the said J. B. Cowan was a married man and the head of a family, and it further appearing that neither of the contracts between J. B. Cowan and the plaintiff, Samuel Caruthers, or the contract between the said Cowan and Gary & Smith, was signed and acknowledged by Mrs. J. B. Cowan, the wife of the said J. B. Cowan, therefore, no mechanic's lien was created on the said new building, and therefore you will find your verdict for the Security Mortgage and Trust Company."

The proposition propounded under this assignment is: "A mechanic's lien can not be fixed upon the business homestead of the head of a family, unless through a contract signed by the husband and wife and duly acknowledged."

There was evidence tending to show that the lot had been the business homestead of Cowan, and that it was his intention to continue to so use it at the time the building contract was made; while the contract under which the lien is claimed is signed by the husband alone. This defense was not specially plead, and the court refused to charge upon that issue. The proposition contended for by appellant is sound, but appellees urge that this defense was not available to the defendant under the general denial pleaded. The main central fact alleged by the plaintiff is, that he holds a mechanic's lien upon the building and lot in question, the foreclosure of which is sought to be obtained. No personal judgment for the debt is asked; the single object of the proceeding is the establishment and foreclosure of his lien. A general denial puts in issue every material fact alleged in the plaintiff's petition. Altgelt v. Emilienburg, 64 Texas, 150; Tisdale v. Mitchell, 12 Texas, 68; Henderson v. Ennis, 18 Texas, 411. "We have abolished all common law forms of action, and under our system the plaintiff states the very case upon which he seeks to recover, and a general denial puts him upon proof of at least every affirmative allegation necessary to maintain his suit, unless it be some allegation that by the rules of pleading must be met by a plea in abatement. * * * The defendant, in pleading to the action, looks to the petition, not to see whether it is trespass, trover or case, but to ascertain what are the

facts he is expected to meet; what he must disprove under the general denial, or confess and avoid under a special answer." 63 Texas, 681-82. The only fact alleged in plaintiff's petition in which the defendant (appellant) was at all interested was the existence of the mechanic's lien upon the house and lot. This issue it was called to meet upon the trial, and all other issues with which it was concerned were purely collateral. If the general denial could not serve the purpose of putting in issue this fact, then the defendant was required to confess and avoid, and that is the contention of appellee. A plea of confession and avoidance is in demand when the facts alleged in plaintiff's petition are true, and there exists independent facts not appearing in the petition which will meet and overthrow the effect of such alleged facts. If the property was the homestead, the initial fact which could give existence to a lien upon it would be a contract signed by the husband and wife, properly acknowledged. Const., art. 16, sec. 50; 2 Sayles' Civ. Stats., art. 3174. And this applies to the business homestead as well as to the residence homestead. The principles governing the residence homestead and business homestead are the same; they can be acquired and divested in the same way. Wolf v. Butler, 28 S. W. Rep., 51; Hargadine v. Whitfield, 71 Texas, 482.

If the facts should show that the property upon which the lien is asserted was the homestead of Cowan at the time the contract was executed, then no lien existed upon it, and the material fact alleged by plaintiff would fail in proof and his suit would end adversely. The proof of that fact would disprove his main allegation and defeat his suit. We are of opinion that the court should have submitted the issue to the jury. The special charge should not have been given, as it assumed that the proof was incontrovertible and absolute in its effect; but it called the attention of the court to the issue, and should have elicited a proper charge upon the subject.

The following portions of the general charge of the court are assigned as error: "If from the evidence you further find and believe that the officers and managers of the Security Mortgage and Trust Company assented to said contract with Caruthers, and directed him to proceed with the work, then he (Caruthers) would have a lien not only upon the house, but also upon the lot of ground upon which it stands, to secure the amount due him, with interest, and you should so say by your verdict."

"If from the evidence you find and believe that their contract with Cowan was filed with the county clerk of Dallas County within four months after their debt became due, then Smith & Gary will have a lien on the building so erected for the sum of $1476.34, with interest at the rate of 6 per cent per annum from the time same was due to the present; and if you find from the evidence that the general officers of the Security Mortgage and Trust Company knew that the building was to be erected and assented to the erection of the same, and directed that the work should be done, then the intervenors would

have a lien, not only on the building, but also on the lot of ground on which it is erected, and this lien could not be defeated by any understanding or agreement between Cowan, Caruthers and the officers of the Security Mortgage and Trust Company, if you find that any such agreement or understanding was had."

The plaintiff nowhere alleged that the appellant had waived its prior lien in favor of his lien, or had, by any acts on its part, estopped itself from asserting the superiority of its lien. The issue of waiver or estoppel was not made by the pleadings; appellant plead fully the facts of its defense, setting out its prior lien and sale of the property under it, etc.; to this defense the plaintiff made no reply of waiver or estoppel. Under this state of the pleadings the court should not have submitted the issue. Banking Co. v. Hutchins, 53 Texas, 360; 74 Texas, 360.

In view of the fact that the case is to be tried again, we will consider the merits of the charge, aside from the question of pleadings. Was the court justified in instructing the jury, that if the prior lienor assented to the building contract and told the contractor to proceed with the work, he thereby subordinated his prior lien upon the lot to the mechanic's lien? This was the effect of the charge. There is no contention that there was an express waiver by the Security Mortgage and Trust Company of its prior lien upon the lot in favor of the mechanic's lien; but the waiver, it is urged, arises from its assent to the building contract and instruction to the contractor to proceed with the work. In other words, the effect of the contention is, that such acts estopped the prior lienor from asserting the superiority of his lien over the mechanic's lien. Can it be said, as a matter of law, that the prior lienor cannot consent to and encourage the erection of a building upon the lot upon which his lien rests without yielding the priority of his lien to that given by the statute to the contractor or builder? The owner of the property, Cowan, had the right to have the building erected upon the lot, regardless of the consent of the prior lien holder, the Security Mortgage and Trust Company, and the statute would give the contractor a lien upon the building superior to that of the said company, but its lien upon the lot would not be affected by the mechanic's lien. 2 Sayles' Stats., art. 3171. The prior lienor had no right to object, and could not prevent the erection of such building upon the lot; the statute protects the prior lien on the lot, and the consent of the prior lienor is wholly unnecessary in the premises. Under this state of the law, does the fact that the prior lienor did consent to and encourage the erection of the building subordinate his lien on the lot to the statutory lien of the builder, without regard to the question of the intention on the part of the prior lienor, and the bona fide reliance upon such conduct, as a waiver, by the contractor? The contractor must be charged with knowledge of the law, and therefore he knew that the prior lien was protected by statute, and that his lien could not obtain precedence except upon a voluntary surrender of such priority by the prior lien holder. Did the assent to

the building contract and direction to proceed with the work by appellant necessarily import such voluntary surrender of the priority of its lien? We think not. In discussing the question of estoppel, as applied to a prior lien holder asserting his lien against a subsequently acquired mechanic's lien, in the case of Whiteselle v. Loan Agency, 27 S. W. Rep., 315, it is said: "Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps might have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy." 2 Pom. Eq. Jur., sec. 804. The essential elements constituting the estoppel are as follows: "(1) There must be conduct—acts, language or silence—amounting to representation, or a concealment of real facts. (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them must be necessarily imputed to him. (3) The truth of these facts must be unknown to the other party claiming the benefit of the estoppel at the time of such conduct and at the time it was acted upon by him. (4) The conduct must be with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse. In other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done, by reason of the first party being permitted to repudiate his conduct, and to assert rights inconsistent with it. * * * Id., sec. 805. The doctrine as announced by the author just quoted, is fully sustained by our adjudicated cases. Fielding v. Du Bois, 63 Texas, 636; Page v. Arnim, 29 Texas, 54, 71; Burleson v. Burleson, 28 Texas, 384; Scoby v. Sweatt, Id., 715; Mayer v. Ramsey, 46 Texas, 371; Seale v. Baker, 70 Texas, 283."

The charge of the court, as to Caruthers, was erroneous. As to Gary & Smith, it was erroneous, for the same reasons, and for the further reason that the evidence fails to show that the appellant had anything whatever to say to them, or any dealings with them.

We deem it unnecessary to discuss other assignments presented. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 12 1895.