## PEOPLES v. BROCKMAN et ux.†

(Court of Civil Appeals of Texas. San Antonio. Jan. 29, 1913. On Motion for Rehearing, Feb. 19, 1913.)

1. ACTION (§ 48*) — JOINDER OF CAUSES — TORT AND CONTRACT.

Causes of action for tort and for breach of contract may be joined, where they are connected with each other or grew out of the same transaction.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 450, 471, 490–510; Dec. Dig. § 48.*]

2. ACTION (§ 48*)—JOINDER OF CAUSES—TORT AND CONTRACT.

In an action to recover a balance due on the purchase price of cattle, and for the conversion of certain horses, where defendant pleaded that he bought both the cattle and the horses for the consideration already paid, and there was no claim that there was more than one sale, the causes were properly joined, since the rights of the parties, with respect to both causes, would be determined by determining what the contract was.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 450, 471, 490–510; Dec. Dig. § 48.*]

3. SALES (§ 355*)—SET-OFF — NECESSITY OF PLEA.

In an action by a husband and wife for the purchase price of cattle owned by the wife, evidence that, after delivery to defendant, the husband retook and converted certain of the cattle was inadmissible, in the absence of a plea of set-off.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1025–1043; Dec. Dig. § 355.*]

4. TRIAL (§ 260*) — REQUESTS COVERED BY OTHER INSTRUCTIONS.

In an action for a balance due on the purchase price of cattle and for conversion of horses, where defendant pleaded a bill of sale for both the horses and cattle for the consideration already paid, and in which plaintiff claimed that the bill of sale was obtained by fraud or misrepresentation, instructions that if the bill of sale was not so obtained, but was intended as a conveyance of all the stock for the consideration therein stated, to find for defendant, and that even if the bill of sale was not intended to be a conveyance of title to the stock, if plaintiff and defendant made an oral contract of sale of all the cattle and horses for the consideration paid, to find for defendant, fully submitted the defenses, and a special charge to find for defendant, unless plaintiffs had shown by a preponderance of the evidence that the bill of sale did not state the true trade, and that the horses were not to be included or that it was procured by fraud, was properly denied.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. SALES (§ 355*)—PRICE—EVIDENCE ADMISSIBLE UNDER PLEADINGS.

In an action for the purchase price of 104 head of cattle, evidence that, after delivery of this number of cattle by plaintiff's son, a cow and calf were cut out and left with plaintiff at her request was admissible under a general denial.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1025–1043; Dec. Dig. § 355.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

### On Motion for Rehearing.

6. PLEADING (§ 216*)—DEMURRER—HEARING AND DETERMINATION.
In determining whether a demurrer to the petition for misjoinder of causes in tort and on contract was properly overruled on the ground that they were connected with each other or arose out of the same transaction, the allegations of the answer may be considered as bearing on such connection.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 535–539; Dec. Dig. § 216.*]

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Action by H. H. Brockman and wife against J. S. Peoples. Judgment for plaintiffs, and defendant appeals. Reformed and affirmed.

Martin & Martin and L. Old, all of Uvalde, for appellant. G. B. Fenley and Claude Lawrence, both of Uvalde, for appellees.

MOURSUND, J. H. H. Brockman and Mary Brockman, husband and wife, sued J. S. Peoples and Joel Peoples, Jr., alleging that in January, 1910, said Mary Brockman sold said J. S. Peoples a certain stock of cattle to be delivered at the Barksdale ranch in Edwards county, for which he agreed to pay her the market value of said cattle; that payment was to be made by said J. S. Peoples paying off a note for $1,000 owing by plaintiff to the State Bank of Uvalde, and the remainder to be paid in cash; that they delivered to said J. S. Peoples 104 head of the cattle of the market value of $15 per head, making a total of $1,560; that Peoples paid said $1,000 note, but breached his contract with respect to the payment of the remaining $560, whereupon plaintiffs rescinded said contract as to the remaining cattle owned by them out of said stock cattle. Plaintiffs further alleged, at the time of entering into the agreement above mentioned, Mary Brockman stated to said Joel S. Peoples that after delivery of the cattle, if he should decide to purchase some horses, belonging to her, running on said ranch, she would sell them to him, and they would agree on the price to be paid for them; but no contract or agreement with reference to said horses was then or thereafter agreed to between them, but a few days after the delivery of said cattle defendants Joel S. Peoples and Joel Peoples, Jr., wrongfully and without legal right, and without the knowledge or consent of either of plaintiffs, took from the possession of plaintiffs five horses and a mule, which they converted to their own use and benefit; that the value of said animals, at the date of the conversion thereof, was $415, for which amount plaintiffs prayed judgment, as well as for said amount of $560, balance alleged to be due for the cattle. Plaintiffs further alleged that about January 7, 1910, and about two days after the making of the parol agreement above set out, and before the delivery of said cattle, the said Joel S. Peoples went to said Mary Brockman and de-

fendant Z. D. Brockman and requested and urged them to sign a bill of sale to all the live stock of plaintiffs, both cattle and horses, which recited a consideration of $1,000; that said parties at first refused to sign the instrument, because the true consideration was not recited therein, and because it included the horses, which were not included in the sale made to him; that said Peoples acknowledged the correctness of the original agreement, as hereinbefore set out, and stated that the signing of the bill of sale in no manner affected said original trade; that he further represented to them that he desired said bill of sale for the sole purpose of showing same to the bank in order that he might better handle the indebtedness against said stock, and in order to raise the money to pay off said note and satisfy the mortgage; further that he did not intend said instrument as a bill of sale, but to use it only as a mortgage, or as collateral security, by means of which he would be able to raise the amount of money necessary to pay off the said note; also that he desired the horses included in the said instrument, because the cattle might fall short in numbers, and not be sufficient to reimburse him for paying off said note, in which event he wanted a sufficient number of horses at their market price, to pay him for the shortage in cattle, if any, to make the amount of said note; that said Joel S. Peoples is now falsely and fraudulently claiming such instrument to be an unconditional bill of sale to the property described therein, and claiming title to such property against plaintiffs.

Defendants, on January 6, 1911, filed a cross-action against plaintiffs and Z. D. Brockman, sequestrated the remaining horses, mules, and cattle of plaintiffs, claiming that said J. S. Peoples was the owner of all of the same. On March 4, 1911, they filed their original answer, which contained various exceptions, general denial, and a plea that on January 7, 1910, J. S. Peoples bought from Mary Brockman and Z. D. Brockman the entire stock of horses and cattle, in the brands mentioned in plaintiffs' petition, for the amount due on said note to the bank, which he had paid, and that said Mary Brockman and Z. D. Brockman executed a bill of sale to defendant J. S. Peoples for all of said horses and cattle. They prayed for judgment for possession of the balance of the horses and cattle.

Upon the trial it was agreed that neither Z. D. Brockman nor Joel Peoples, Jr., had any interest in the suit, and they were eliminated from the same. The trial resulted in a verdict and judgment in favor of plaintiffs for $696, and for possession of the remaining stock originally belonging to plaintiffs, from which judgment J. S. Peoples has appealed.

The first assignment of error is based upon the overruling of a special exception at-

tacking the petition on the ground that an action, based on the breach of a contract, is joined with an action based upon a tort.

[1] Under our liberal procedure, a suit may include an action for breach of contract and one for tort, provided they are connected with each other or grew out of the same transaction. Harris v. Cain, 41 Tex. Civ. App. 139, 91 S. W. 869; Kirby Lumber Co. v. Chambers, 41 Tex. Civ. App. 632, 95 S. W. 609; Hoskins v. Velasco Nat. Bank, 48 Tex. Civ. App. 246, 107 S. W. 604; Farmers' Bank v. Merchants' Bank, 136 S. W. 1123. See, also, Emerson v. Nash, 124 Wis. 369, 102 N. W. 921, 70 L. R. A. 326, 109 Am. St. Rep. 944. The allegations of defendant's answer may be considered in aid of plaintiffs' petition. Loan Ass'n v. Biering, 86 Tex. 476, 26 S. W. 39.

[2] If the pleadings show that the causes of action grow out of the same transaction or are connected with each other, then this assignment must be overruled. The controversies grew out of a trade between Mary Brockman and Joel Peoples, and it is not contended by either party that more than one trade was made. Mrs. Brockman contends the trade was verbal and made a couple of days before January 7th, while Peoples contends the trade was evidenced by bill of sale and was made on January 7th. Mrs. Brockman claims that the bill of sale was fraudulently procured. She admits the sale of her cattle, but not of her horses. Peoples claims he bought both horses and cattle, and in pursuance of such claim takes possession of the horses alleged to have been converted. Mrs. Brockman sues for balance due on the contract for sale of the cattle, and for the damages resulting from the conversion of the horses. The real issue is, What was the trade between these parties? and the court, being called upon to determine such question, should also determine all the rights of the parties with respect to the subject-matter of such contract from either standpoint. If Peoples is sustained, he owes plaintiffs nothing, and recovers all other stock sued for by him in his cross-action; if plaintiffs are sustained, they recover the balance due on the cattle, the amount due for horses converted, and the remainder of the stock. The claims of each party are based upon the trade made between them; and, when the terms of the trade are established, all rights, which are asserted by reason of such trade, should be settled. If the taking of the horses constitutes conversion, it is a tort, yet it is admitted by defendant's answer that the act alleged to constitute a tort was based upon a right claimed under the contract of sale; in other words, he connects his act with the contract of sale. We are of the opinion that the two causes of action are properly joined, and therefore overrule the assignment.

[3] The second assignment of error complains because the court refused to permit appellant to show that, in the summer of 1910, appellee H. H. Brockman took possession of five of the cattle delivered to appellant under said contract, which had escaped from appellant, and converted the same to his own use and benefit. The court sustained the objections to the testimony; one of which was that there was no pleading to support it. Appellant contends that under the pleading charging a delivery of 104 cattle under the contract, to which he interposed a general denial, he could show that these cattle had been taken by H. H. Brockman, and show the value thereof. The contract was made in January, and certain cattle delivered at that time and received by appellant. He at once sold some of the cattle. After such delivery, the five head escaped. They were not, by any kind of agreement, transferred back to Mary Brockman, nor transferred to H. H. Brockman. Appellees alleged that in March the contract was breached by appellant, and appellees refused to deliver any other cattle. The testimony, therefore, would not show that appellant did not acquire the five head of cattle under his contract with Mary Brockman, but that, having acquired same, they were converted by H. H. Brockman. No mention is made of this in appellant's cross-action, nor does he seek, in his pleadings, in any way to offset his claim for such conversion against appellees' claims against him. We are of the opinion the trial court was correct in excluding this evidence, because the offset was not pleaded, and overrule the assignment. Article 1907, Revised Civ. Statutes 1911; Richey Grocery Co. v. Warnell, 103 S. W. 419.

[4] The third assignment complains of the refusal of the following special charge: "That unless you find that plaintiffs have shown, by a preponderance of the evidence, that the bill of sale did not state the true trade, and that the horses were not to be included, or that it was procured by fraud as charged, you will return a verdict on all issues for defendants and so say by your verdict." The proposition is made that defendant was entitled to have his theory of the case submitted affirmatively; and by the refusal of this charge he was deprived of such right. We would not regard this special charge as an affirmative submission of appellant's theory. The charge of the court submitted two theories for the defense, one that if the bill of sale was not obtained by fraud or misrepresentation, but was understood and intended as a conveyance of all stock described therein for the sole consideration therein stated, to find for defendant; the other that, even if the bill of sale was never intended or understood by Mary Brockman to be a conveyance of title to said stock when she signed it, still if she and J. S. Peoples made an oral contract of sale of all the cattle and horses then under mortgage to the bank, and the sole consideration to be paid by Peoples was the payment of the note to said bank, to find for defend-

ant. No complaint was made of this charge, and we hold that it submitted the defensive issues so fully as to make it unnecessary to give the special charge. The assignment is overruled.

[5] By the fourth assignment, complaint is made of the first paragraph of the court's charge, wherein he tells the jury to determine the market value of all of the cattle delivered to J. S. Peoples at the time and place of delivery, and, if the market value of the cattle delivered and the horses taken was in excess of $1,000, that their verdict should be in favor of plaintiffs for the excess. The objection is that this charge is on the weight of the evidence, because the uncontradicted evidence shows that after receiving 104 head, when Peoples arrived at Brackett with the cattle, he delivered to Mrs. Brockman a cow and calf, for which reason the court should not have instructed the jury to base its verdict on all of the cattle delivered. The testimony is conflicting whether 104 or 106 head were delivered; Z. D. Brockman testifying to 106 head, but the other witnesses to 104 head. Appellees contend that the delivery was complete, and the rights of the parties fixed thereby, and that appellant, to avail himself of this item, should have pleaded the same as an offset.

It is expressly pleaded that 104 head were delivered under the contract; but the evidence shows that, after taking the cattle to Brackett, appellant, at Mrs. Brockman's request, cut out a cow and calf and delivered same to her. This was before the contract was breached by defendant, and while, according to plaintiffs' pleading, he still had about 75 head of cattle to receive. Mrs. Brockman testified the milch cow and calf were cut out and left at her house, as such cow was excepted from the contract, and, according to same, was not to be delivered to Peoples. Her son had made the delivery; but as the cow and calf were never included in the contract, and were delivered by mistake, we believe such mistake and its correction could be shown under the general denial, which put in issue the number of cattle delivered under the contract. The jury was authorized, under the charge, to allow a recovery for these two animals; and we must presume they did so.

The error could only make a difference of $30 in the judgment; and, as appellees have given permission, in case we have a doubt in regard to this matter, to reduce the judgment to that extent, we reform the judgment by deducting $30 from the amount thereof, and, as so reformed, the same is affirmed.

Reformed and affirmed.

On Motion for Rehearing.

[6] Appellant contends there is no authority for considering the allegations of an answer, in aid of a petition, when passing on a de-

murrer. We think there is ample authority for so holding; and, in addition to the cases cited in our opinion, we call attention to the following cases: Lyon v. Logan, 68 Tex. 521, 5 S. W. 72, 2 Am. St. Rep. 511; Day Company v. State, 68 Tex. 538, 4 S. W. 865; Wright v. McCampbell, 75 Tex. 644, 13 S. W. 293; Zan v. Clark, 53 Tex. Civ. App. 525, 117 S. W. 892; Parlin & Orendorff Co. v. Hanson, 21 Tex. Civ. App. 401, 53 S. W. 62; Tres. Palacios Co. v. Eidman, 41 Tex. Civ. App. 542, 93 S. W. 699; Texas & N. O. R. Co. v. Miller, 128 S. W. 1171; Security Trust Co. v. Caruthers, 11 Tex. Civ. App. 437, 32 S. W. 837; Riggs v. Pope, 3 Tex. Civ. App. 181, 21 S. W. 1013; Looney v. Simpson, 25 S. W. 477; Werner v. Kasten, 26 S. W. 322; Hennessy v. Clough, 40 S. W. 157; Weathered v. Golden, 34 S. W. 761. The cases cited by appellant, viz., Coons v. Green, 55 Tex. Civ. App. 612, 120 S. W. 1108, and Porter v. Pecos & M. T. Ry. Co., 56 Tex. Civ. App. 479, 121 S. W. 897, both decided by the Court of Civil Appeals of the Second District, assert the contrary doctrine. We regard these two cases as being contrary to the great weight of authority in Texas, and therefore adhere to the rule supported by the large number of cases above cited.

The case of Biddle v. Terrell, 82 Tex. 335, 18 S. W. 691, relied upon by appellant, was one in which it was sought to have the court consider an allegation in plaintiff's petition as expunged and replaced by a contradictory allegation in defendant's answer, and the court held this could not be done. In this case no allegation of plaintiff's petition need be dispensed with; but, if such allegations, standing alone, do not show the connection between the causes of action pleaded, then the answer may be looked to for the purpose of showing that the rights asserted to the property charged to have been converted are asserted under the claim that, in the sale by Mrs. Brockman to defendant, all the Brockman horses were sold to him, and that he took said horses, claiming to own same under the bill of sale sought to be annulled in plaintiff's petition. The connection between the causes of action is thus fully shown. See Riggs v. Pope, supra.

Motion overruled.