### PICKENS et al. v. SEATON.
### No. 2679.

Court of Civil Appeals of Texas. El Paso.
June 16, 1932.

Rehearing Denied July 14, 1932.

Goggans & Allison and James F. Gray, all of Dallas, for appellants.

White & Yarborough, of Dallas, for appellee.

HIGGINS, J.

The appellee was riding as a guest in an automobile owned and being driven by appellant Pickens. A collision with another car occurred and Mrs. Seaton sustained personal injuries on account of which she brought this suit against Pickens and Universal Automobile Insurance Company to recover damages resulting from her injuries. Judgment in her favor for $6,500 was rendered against both defendants, from which they appeal.

The insurance company was joined as a party defendant upon the theory that it was liable to the plaintiff by virtue of an insurance policy issued by it to Pickens and which was in effect at the time the injuries were sustained. The company filed plea in abatement setting up misjoinder. It also filed a special exception raising the same questions presented by the plea. The plea and exception were overruled. The action of the court in this respect is assigned as error and here presented for review by a number of propositions.

Provisions of the policy material to consideration of the question at issue read:

"Universal Automobile Insurance Company, Dallas, Texas (Hereinafter Called the Company)

"In consideration of the premiums charged for this policy, and the statements set forth in the 'Schedule of Statements' and of all the terms, provisions and agreements set forth on the following pages of this policy, all of which are hereby referred to and which the assured warrants to be true by the acceptance of this policy, does hereby agree, subject to the exclusions, limits, conditions and agreements herein set forth, to insure the Assured named and described herein, for the term herein specified, against loss for such of the perils, and from only such of the perils as are described and limited in the 'Schedule of Perils' appearing on the following pages and for which a specific premium charge is made as evidenced by inserting such a premium charge in writing opposite the corresponding peril in the following 'Schedule of Coverage.'"

"The Company does hereby agree to insure the Assured named and described in the 'Schedule of Statements' herein, for the term therein specified against direct loss by rea-

son of liability imposed by law upon the Assured for damages by reason of the ownership or maintenance of the automobile described in Statement 6 of the 'Schedule of Statements', and the use thereof for the purposes described in Statement 7 of the 'Schedule of Statements' (including loading and unloading thereof), to an amount not exceeding the limits hereinafter stated, if such loss be sustained on account of

"Item 6 Liability

"Bodily injuries or death accidentally suffered or alleged to have been suffered by any person (excluding any employee of the Assured suffering injuries or death while engaged in the operation, maintenance or repair of the automobile insured hereunder or while engaged in the usual course of the trade, business, profession or occupation of the Assured) as the result of an accident occurring while this policy is in force; provided there is a specific premium charge made in writing in Item 6 of the 'Schedule of Coverage' on the preceding page. The liability of the Company under this Item 6 for loss or expense on account of an accident resulting in bodily injuries to or in the death of one person is limited to the amount named in Item 6, Section 2 of the Schedule of Perils and subject to the same limit for each person, the total liability of the Company for loss or expense on account of an accident resulting in bodily injuries to or in the death of more than one person is limited to the amount named in Item 6, Section 2 of the Schedule of Perils."

"Investigation and Defense

"In the event that loss from the perils set forth in item 6 and/or Item 7 is insured against hereunder, then as respects the peril or perils so insured against the limits of the Company's Liability shall be:

"(A) To investigate all accidents covered by Item 6 and/or Item 7 of the 'Schedule of Coverage' of this policy and at its expense to employ attorneys to represent the Assured in all suits brought thereon, whether groundless or not; and

"(B) In event a final judgment be rendered against the Assured, to pay the same to an amount not exceeding the limits specified herein; and in addition,

"Interest and Costs

"(C) To pay, irrespective of the limit of liability stated in the Policy, all costs taxed against the Assured in any such defended suit, all expenses incurred by the Company, all interest accruing after entry of judgment until the Company has paid, tendered or deposited in Court such part of such judgment as does not exceed the limit of the Company's liability thereon, also any expense incurred by the Assured for such immediate surgical relief as shall be imperative at the time of bodily injury."

"Change of Ownership

"Conditions, Limitations and Agreements

"A. All rights hereunder are strictly personal to the Assured named in this policy, and this policy shall terminate immediately if there is any change, voluntarily or otherwise, in the ownership or interest of such Assured in this policy or in the automobile insured hereunder; provided, that if such change in interest be by reason of the death of the named Assured (if the Assured is an individual), this insurance shall continue in force for the benefit of his legal representatives until noon, Standard Time, of the day following the date of the death of the Assured, and for twenty-nine (29) days thereafter, unless the original term of the policy sooner expires or the policy be cancelled."

"Bankruptcy and Insolvency

"Q. It is understood and agreed that the Insolvency or Bankruptcy of the Assured or other persons entitled to benefit hereunder shall not release the Company from the payment of damages for injuries or loss occasioned during the life of the policy. In case execution against the Assured or such other defendants is returned unsatisfied in an action brought by the injured (or if death results from the accident by such other parties in whom the right of action vests) an action may be maintained by the injured person (or such other parties in whom the right of action vests) against the Company for the amount of the judgment of said action not exceeding the amount of the policy."

By its various propositions the company asserts: First, the policy is a contract of indemnity, personal to the assured, and no right of action thereon lies in favor of a third person such as Mrs. Seaton; second, the cause of action against Pickens sounds in tort, and that asserted against the company is based upon contract, and for such reason the joinder is improper.

■ It will be observed the policy obligates the company, "In event a final judgment be rendered against the assured, to pay the same to an amount not exceeding the limits specified herein; and in addition,

"To pay, * * * all interest accruing after entry of judgment until the Company has paid, tendered or deposited in Court such part of such judgment as does not exceed the limit of the Company's liability thereon; also any expense incurred by the Assured for such immediate surgical relief as shall be imperative at the time of bodily injury."

In Texas Landscape Co. v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423, 425 (writ dismissed) the court had under consideration a policy of insurance containing a provision obligating the insurer "to pay and satisfy judgments rendered against the assured in legal proceedings defended by the Corpora-

tion and to protect the assured against the levy of executions against the assured."

In that case the court rejected the theory that the contract was purely one of indemnity, personal to the assured, and sustained the right of recovery by the plaintiffs against such company under the death by wrongful act statute. The ruling was based upon the provision quoted.

A like ruling was made by Judge Hutcheson in Lake v. Texas News Co. (D. C.) 51 F. (2d) 862, 863, where it was said: "The pleading in this case discloses an agreement on the part of the removing defendant to stand liable on any cause of action for damages arising against its insured, Texas News Company, and, further, to discharge any judgment which might be rendered against its insured. It is perfectly competent for an insurance company to make such argement, and if it does so it puts itself in like case with the insured with whom it has agreed, and gives to any person injured a direct action against it and its insured on account of injuries received at the hands of the insured. In such case, the one injured has one controversy against them both; not two controversies, one against each. The Texas courts have so held. Texas Landscape Co. v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423; American Automobile Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534. See also Morrell v. Lalonde (D. C.) 271 F. 19."

We concur in the conclusion reached in the two cited cases.

■ The Longoria Case also adversely disposes of the company's contention that the bankruptcy and insolvency provision of the policy is exclusive of any other right or remedy which Mrs. Seaton might have against the company.

In our opinion this provision adds force to the view that the policy is not to be construed strictly as a contract to indemnify the assured against loss or damage. It merely makes clear the liability of the company to third persons in case of bankruptcy or insolvency of the assured, and we think it is not to be construed as a limitation upon other terms of the policy which enure to the benefit of third persons such as Mrs. Seaton.

■ The other contention that the causes of action are improperly joined because one sounds in tort and the other arises ex contractu is without merit for they are so connected with each other as to make their joinder entirely proper. American A. Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534, and Peoples v. Brockman (Tex. Civ. App.) 153 S. W. 907.

Issue No. 19 reads: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably compensate the plaintiff for her physical and mental suffering in the past, if you find from a preponderance of the evidence that there has been any in the past, and in the future; if you find there will be any in the future, and for her diminished capacity, if any, to labor and earn money in the past, if you find from a preponderance of the evidence there has been any in the past, and in the future, if you find from a preponderance of the evidence there will be any in the future, resulting directly and proximately from the injuries, if any, of the Plaintiff sustained by her on the occasion in question?"

In connection with the issues submitted this instruction was given: "You are further instructed that while you are deliberating upon your answers to the Special Issues, you will not mention nor refer to, nor take into consideration any matter, fact or circumstance, other than the testimony in evidence, all of which I instruct you particularly to observe and obey."

In the motion for new trial misconduct of the jury was charged. Four jurors testified that in answering issue No. 19, they took into consideration the probable expense to the plaintiff for doctors' and hospital bills and medicine. Two of these four also testified they considered the matter of attorney's fees.

The juror Briley testified:

"Q. Mr. Briley, in determining the amount which you all figured she was damaged and injured, did you take into consideration doctor bills, hospital bills, medical bills, and matters of that kind?

"Mr. White: Objected to as leading, etc.

"A. Well, then, I did.

"Q. In other words you considered that this $6500 provided for different and whatever medical bills, doctor bills, hospital bills, and expenses of that kind that she had had in connection with this injury? A. Yes, sir."

The juror Watson testified:

"Q. What are the facts with reference to whether doctor bills and hospital bills were considered and discussed? A. Yes, sir, it was considered.

"Q. Now will you state to the judge up here, Mr. Watson the discussion that took place about those matters, the best you remember? A. Well, the best I remember, in figuring up about what they were going to give this lady, we included a doctor bill. Of course we did not know what the doctor bill was, we were just guessing at it. They brought this doctor bill in and the hospital bill in, and we figured the lawyer's fees, and such as that.

"Q. What was said about lawyers fees that you mentioned there? A. Well one man said, —I don't remember his name; but he said that he considered about $4,000 would be about right after the lawyers were paid and the doctors bills and sanitarium fees.

"Q. Well, was there anything said about you would have to give her $6,500 before she would get a dime? A. Yes sir, there was something said about that.

"Q. Said about what? A. That she would have to have $6,500 to get anything out of it by the time the lawyers were paid and the hospital bills."

██ The juror Pickard testified to about the same effect.

It thus appears that four jurors considered and allowed items of expense which were unauthorized under the court's charge.

Under the authorities it must be held this constituted misconduct and necessitates reversal. Speer's Special Issues (1932) 525 et seq.; Estep v. Bratton (Tex. Civ. App.) 24 S.W.(2d) 465; Lake Worth Amusement Co. v. Maples (Tex. Civ. App.) 36 S.W.(2d) 1072; St. Louis S. W. R. Co. v. Lewis (Tex. Com. App.) 5 S.W.(2d) 765.

It is true seven other jurors testified they did not consider any of these improper items, but this does not contradict the testimony of the four mentioned who said they considered such matter. The testimony of these four as to what they considered stands uncontradicted.

The only other question presented relates to alleged improper argument to the jury by counsel for appellee. This need not be considered as it should not arise upon retrial.

Reversed and remanded.